THE INDIANAPOLIS AND CINCINNATI RAILROAD COMPANY *v.* PAR-
AMORE.

31   143
141   664
31   143
154   332

RAILROAD.—*Negligence.*—*Pleading.*—Where the owner of a quantity of cord-
wood deposits the same at a certain place near a railroad track, in accord-
ance with the direction of an agent of the railroad company and under an
agreement with such agent by which it is to become the property of the
railroad company when measured and paid for by the company, but until
so measured and paid for to remain the property of such owner, and while
so remaining his property it is consumed by fire originating from a locomo-
tive engine in the use of the company and caused by the negligence of the
employees of the company, and these facts are averred in the complaint in a
suit by such owner against the company to recover the value of the wood;
it is not necessary to allege also the destruction of the wood without the
fault or negligence of the plaintiff.

SAME.—*Burden of Proof.*—It is the duty of a railroad company to use ma-
chinery properly constructed with a view to prevent fire from being com-
municated to property lawfully placed by the owner thereof near the rail-
road track, and the engines should be operated with care and skill to the same
end. If fire is communicated to such property from an engine by reason
of a failure to use proper preventives, or by the carelessness of employees,
the company is liable for the consequences; but negligence in either respect
should not be inferred without proof, the burden of which rests on the par-
ty alleging it.

SAME.— *Watchman.*—The railroad company is not bound to provide a watch-
man to protect property so placed by the owner, at his own instance, with-
out any contract with the company, in danger of taking fire by unavoid-
able accident from the engines used by the company.

APPEAL from the Decatur Circuit Court.

ELLIOTT, C. J.—Paramore, the plaintiff below, recovered
a judgment against the railroad company, from which the
latter appeals.

It appears from the record that the recovery was had up-
on either the second or third paragraph of the complaint.
Demurrers to these paragraphs were overruled; and this
ruling presents the first question in the case. The aver-
ments are substantially the same in each. We state the
facts as they are presented by the third paragraph. It al-
leges, that the railroad company, by its agent, contracted
and agreed with the plaintiff that if he would deliver on

the line of the company's railroad track, at or near the town of New Point, in the county of Decatur, and at such places as were indicated by such agent, a quantity of cordwood for the use of the company, that the latter would, at reasonable times, and at least once a month, measure and pay for the same a fair cash price; that in pursuance of said contract, and in accordance with the instructions of said agent, the plaintiff did, in September, 1865, deliver as directed, one hundred and twenty cords of wood, of the value of five hundred dollars, of which the defendant had notice. Yet the defendant failed and refused to measure said wood, for a long time, to wit, for more than one month; and that before the same was measured, it was totally burned up and destroyed by fire, originating from a locomotive engine of the defendant, and caused by the fault, carelessness, and negligence of the employees of the defendant, &c.

The first paragraph is on contract for wood sold and delivered to the railroad company. The second and third are treated by counsel of both parties, in this court, as paragraphs in *tort*, resting on the allegation that the agents and employees of the railroad company, in charge of the locomotive, by carelessness and negligence in running the same, set fire to and thereby destroyed the plaintiff's wood; and the objection urged to their sufficiency is, that it is not averred that the wood was destroyed without the fault or negligence of the plaintiff. A contract between the parties in reference to the wood, and its delivery on the line of the railroad under the direction of the defendant's agent, are clearly alleged, as well as the failure of the defendant to measure and pay for the wood within the time limited, and no substantial objection to them as paragraphs on contract is apparent. But assuming that it may be inferred that, under the alleged agreement, the wood remained the property of the plaintiff until it was measured and paid for, and before that was done it was destroyed by fire caused by the carelessness and negligence of the servants and employees of the railroad company in running its locomotive on the

track of its road, we think the averments are sufficient to exclude the idea that any negligence on the part of the plaintiff contributed to the result. It cannot be inferred from the facts alleged that the plaintiff was in any wise an actor in the matter of the fire. It is averred, that he deposited the wood on the line of the railroad under the direction of the defendant's agent. He had no connection with, or charge over, the locomotive from which it is alleged the fire originated. The injury was not to him personally, but to his inanimate property, and, for aught that appears, in his absence; and it is averred, that the injury was caused by the negligence and carelessness of the defendant's servants and employees. It is very dissimilar to a case where the action is brought for a personal injury to a passenger on a train, or to one, not a passenger, who is struck or run over by a passing train, in which the plaintiff is necessarily present and an actor, and where his own negligence may readily contribute to the injury.

The cause was tried by a jury. After the verdict for the plaintiff was returned, the railroad company filed a motion in writing for a new trial, which the court overruled. One of the reasons urged for a new trial was, that the verdict of the jury was contrary to the evidence.

Overruling the motion for a new trial is assigned for error.

The evidence is before us, from which it appears that the railroad company had a wood-shed at New Point one hundred feet long, on the north side of the track, and on the north of the shed an open space used as a wood-yard, on which was ricked, in the fall of 1865, about one thousand cords of wood, part of which belonged to the company, and the residue to several other persons. The ricks extended to near the shed, leaving a wagon way between the wood and shed. Paramore, the plaintiff below, in the fall of 1865, (finishing it sometime in November) hauled and ricked up in said wood-yard one hundred and three cords of wood.

which he intended for the railroad company, but had no contract with it for the sale of the wood. A number of persons, including the plaintiff, had frequently hauled and ricked wood there, and when the company needed it for use the amount desired was measured and paid for; but until that was done it remained the property of those who furnished it. The plaintiff's wood in controversy was deposited there in the same manner, and had not been measured, received, or paid for by the company, when, on the 6th of January, 1866, the wood-shed accidentally caught fire and burned down. The fire was communicated from the shed to the wood, the greater part of which, including all the plaintiff's, except about fifteen cords, was burned up. The plaintiff himself testified, that he had no contract with the company under which the wood was deliverd; that he had been putting out wood ever since the road was built, and never had a contract with the company. And the jury found specially, that the wood was the property of the plaintiff, Paramore, when it was burned up. So that the recovery must be sustained, if at all, on the ground that the fire was caused and communicated to the wood by the carelessness and negligence of the company's servants and employees.

The evidence does not show how the fire originated. A quantity of dry wood had been sawed and piled up at the south side of the shed, close to the track, for the use of passing trains. The fire was first discovered in this pile of wood, which was then burning rapidly, but it communicated immediately afterwards to the shed, which was of light, dry material. The day was dry and windy, and the flames spread with great rapidity, and in a very short space of time the whole shed presented a sheet of flame, which it was impossible to arrest. The agent of the company, whose office was but a short distance from the wood-shed, gathered together fifty or sixty hands, as soon as possible after the fire was discovered, who used every possible effort to save the wood, but the greater part of it was burned.

It might, perhaps, be inferred that the fire originated, in some way, from a locomotive; but the only evidence from which such an inference can be drawn is, that two trains, one a passenger and the other a freight train, had passed that point but a short time before the fire was discovered. But if it is inferred the fire thus originated, still there is not a particle of evidence to show that it was caused by any defect or imperfection of the machinery, or by any want of care or prudence on the part of those having charge of the trains, unless such negligence is to be inferred, *prima facie*, from the fact of the fire, thus throwing on the defendant the burden of disproving negligence, without any affirmative evidence to establish its existence. The American cases, except in those states where it is regulated by statute, seem generally to concur in holding, that no such inference can arise from the fact alone that a fire is thus produced. See Redf. Railw. § 125,5, and cases there cited; *Terry* v. *The N. Y. C. R. R. Co.*, 22 Barb. 574; *Rood* v. *N. Y. & Erie R. R. Co.*, 18 Barb. 80; *Field* v. *N. Y. C. R. R. Co.*, 32 N. Y. 339.

The use of such engines in operating railways is authorized by law, and why should the presumption of negligence arise from the fact of fire being communicated by them? It will scarcely be denied that they are liable, unavoidably, to communicate fire, especially during very dry periods, to combustible matter near the track; and we see no reason why the mere fact that a fire is thus caused should raise the presumption of negligence. It is undoubtedly the duty of railroad companies to use machinery that is properly constructed with a view to prevent fire from being thus communicated, and the engines should be operated with care and skill to the same end. And if fire is communicated by an engine, caused by a failure to use proper preventives, or by the carelessness of employees, the company is liable for the consequences; but as negligence, in either respect, involves a wrong, it should not be inferred without proof, the burden of which rests upon the party alleging it.

It is however insisted on the part of the appellee, that it was the duty of the railroad company, under the circumstances, to have kept a guard, or watchman, constantly stationed at the wood-shed to guard against accidents by fire; and that a failure to do so was such culpable negligence as to render the company liable. It appears from the evidence that the fall and forepart of the winter of 1865 was an unusually dry season, and that, in some way, fire was communicated to the roof of the wood-shed, on at least two occasions, but was extinguished without injury, and the company thereafter kept a watchman stationed there, until within a week or ten days of the time the wood was burned, when a change occurred in the weather; it rained, and perhaps snow fell, and the watch was discontinued. It subsequently became dry again, and the fire occurred on a dry, windy day.

The plaintiff at the time of hauling the wood to the yard was fully aware of the danger from fire, and knew that fire had been, and was liable to be, communicated to the shed, and in depositing his wood there, assumed the risk of its being burned by unavoidable accident, to which the place rendered it liable; not as is claimed by the appellant's counsel, that he was thereby guilty of such negligence as to bar a recovery for its destruction by the negligence of the railroad company or its employees. That was the proper place to deposit the wood for market, and whilst in doing so the plaintiff assumed the risk of its being burned by unavoidable accident, he was not thereby guilty of negligence; and if the fire was communicated to it by the negligence of the company or those in its employ, the company would be liable. It was the duty of the company to use reasonable precaution by providing properly constructed machinery, and the duty of its servants to use reasonable care and diligence in its use, to avoid the communication of fire to the shed and wood; but no reason is perceived why the company was under any more obligation than the plaintiff to be at the expense of keeping a watchman stationed there,

to protect the shed and wood and extinguish any fire that might be kindled by unavoidable accident. Every proprietor adjoining a railroad may lawfully deposit his property or goods or erect valuable buildings on his own premises, in close proximity to such road; but in doing so he takes upon himself the risk of danger of fire being communicated thereto without the fault of the railroad company or its servants. And the existence of such danger does not impose on the company any obligation to incur the expense of a guard. The establishment of such a principle would require railroad companies to station guards along the whole line of their roads.

The principle applicable to such cases is, that a party in the exercise of his legal rights must use reasonable and proper care to avoid injury to others. But if such care be exercised, and an injury unavoidably results to others, no liability attaches. *Clark* v. *Foot*, 8 Johns. 421; *Panton* v. *Holland*, 17 Johns. 92; *Thurston* v. *Hancock*, 12 Mass. 220; *R. R. Co.* v. *Yeiser*, 8 Penn. St. 366.

We think a new trial should have been awarded.

Judgment reversed, with costs, and the cause remanded for a new trial.

*U. J. Hammond* and *L. Howland*, for appellant.

*J. Gavin, J. D. Miller, B. W. Wilson,* and *W. H. Carroll,* for appellee.

