The New York, Chicago and St. Louis Railroad Company *v.* Baltz.

Filed Aug. 30, 1895.

———————◆———————

No. 16,578.

# THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* BALTZ.

141  661
151  656

RAILROAD.—*Damages by Fire.—Spark Arrester.— When can not Recover.—Special Finding.*—In an action against a railroad company for damages by fire, where it is established by clear and positive and uncontradicted evidence that the locomotive which is claimed to have communicated the fire was equipped with the most approved and best known spark arrester, in good repair, and properly operated by a skilled engineer, there can be no recovery, notwithstanding the unsupported and unwarranted finding that the netting of the spark arrester was broken.

SAME.—*Spark Arrester.—Damage by Fire.—Recovery. — Evidence.*—Where the only evidence supporting a recovery in such case was that the engine in question, in passing the place of the fire, emitted

sparks varying in size from a grain of wheat to a grain of corn, and there is no evidence to show that the sparks were not of such size as not to have been emitted through a regulation mesh or screen opening, there can be no recovery.

SAME.—*Burden of Issue.—Not Discharged by Probabilities and Vague Doubts.*—In such an action the burden of the issue of showing defective appliances rests upon the plaintiff, and that burden can not be discharged by merely suggesting probabilities or raising vague doubts, from which reasonable and probable inferences of fact can not be legitimately drawn in contradiction of positive and unequivocal evidence that no defects existed.

From the Kosciusko Circuit Court.

*W. D. Frazer, S. L. Morris, R. C. Bell, J. M. Barrett* and *J. Morris,* for appellant.

*L. W. Royse* and *H. W. Biggs,* for appellee.

HACKNEY, J.—This was an action by the appellee, against the appellant, to recover for the loss of a saw mill and certain timber and lumber, and for injuries to the machinery of said mill, alleged to have been sustained by fire communicated to said mill by the careless and negligent emission of sparks from appellant's locomotive, through insufficient spark arresters.

The complaint was not drawn with care in its allegations as to the insufficiency of the spark arrester, nor in the negative allegation of freedom from contributory negligence; but we pass the questions suggested and proceed to consider what we regard as a vital question.

The following answers to interrogatories, with others, were returned by the jury with their general verdict:

"1. Was not the engine of defendant, which is alleged to have fired plaintiffs' property, described in the complaint, known as number 163? Ans. Yes."

"3. Was not such engine provided with a spark arrester known as the extension front? Ans. Yes."

"10. Was not the spark arrester on the engine of defendant, which is claimed to have started the fire, of the

most approved style and the best known or equal to the best for the prevention of the escape of fire? Ans. Yes.''

''12. Was not the spark arrester in the engine claimed to have fired plaintiff's property in sufficient and proper repair? Ans. No.''

''13. If you say 'no' to interrogatory number 12 state specifically wherein the spark arrester was out of repair? Ans. First, because it emitted too many sparks. Second, because the sparks emitted were too large, there being a break in the netting.''

''14. Was not the engine claimed to have fired plaintiff's property, while passing plaintiff's property and going through Sidney, properly operated by a skilled engineer? Ans. Yes.''

We have carefully read the evidence and find that the answer of the jury to interrogatory numbered 13 is not only not sustained by any evidence, but it is opposed to the uncontroverted evidence of several witnesses who testified to the unbroken condition of the spark arrester. This condition was shown, not only from actual examinations of the spark arrester, but from observations of experts, that a break in the netting of a spark arrester causes the sparks to concentrate at the point of such break and to pass out only at such break. No such action of the sparks emitted from engine numbered 163 was shown by any witness nor by any circumstance while the undisputed evidence of the engineer of that engine was that the sparks were not so concentrated. The evidence, without conflict, supports the answers of the jury to interrogatories numbered 1, 3, 10 and 14.

In this condition of the record we have a case where the locomotive claimed to have communicated the fire was equipped with the most approved and best known spark arrester, in good repair, and properly operated by a skilled engineer. If the fire which destroyed the ap-

pellee's mill was communicated by sparks emitted from that engine, does it follow that the appellant is liable for the loss? Most certainly not in the absence of negligence on the part of the railway company. The existence of negligence can not be inferred from the mere fact that a fire follows soon after the passage of a train. *Indianapolis, etc., R. W. Co.* v. *Paramore*, 31 Ind. 143; *Pittsburgh, etc., R. W. Co.* v. *Hixon*, 110 Ind. 225; *Chicago, etc., R. W. Co.* v. *Ostrander*, 116 Ind. 259; *Ruffner* v. *Cincinnati, etc., R. R. Co.*, 34 Ohio St. 96.

In the last of these cases it was said: ''The emission of sparks from such locomotives results from the mere use and is as natural as it is common; therefore, it can not be presumed, either as a matter of law or matter of fact, that the escape of sparks is caused by carelessness or negligence in the use. * * * It is not enough to show that the injury was caused by sparks escaping from a passing engine, without more. A party is not answerable in damages for the reasonable exercise of a right. A liability arises only when it is shown that the right was exercised negligently, unskillfully or maliciously.''

In *Indianapolis, etc., R. W. Co.* v. *Paramore, supra*, it was held that affirmative evidence of negligence was necessary, even where it appeared that the sparks caused the loss. It was there further held that ''Every proprietor adjoining a railroad may lawfully deposit his property or goods or erect valuable buildings on his own premises, in close proximity to such road; but in doing so he takes upon himself the risk of danger of fire being communicated thereto without the fault of the railroad company or its servants.''

The rule adopted in that case was expressly affirmed in the cases of *Pittsburgh, etc., R. W. Co.* v. *Hixon, supra*, and *Chicago, etc., R. W. Co.* v. *Ostrander, supra*, and in the recent case of *Louisville, etc., R. W. Co.* v. *Schmidt*, 134 Ind.

16, the same principle was enforced with reference to the right of a railway company to use safety valves upon its locomotive, though its use should cause injury to one passing near the railway. Negligence in the use of proper machinery or in failing to use proper machinery may be the basis of an action for damages for burning property adjacent to a railway, but such burning, in the absence of the essential element of negligence, furnishes no ground of relief.

The hazards of fire are no greater from the ordinary use of the railway locomotives than from the saw mill, and when each has opportunity to cause the loss, there is no occasion for departing from the established rules to cast the responsibility upon either. The only shadow of justification for the verdict in this case is upon the claim that certain witnesses, who saw locomotive numbered 163 pass through Sidney the night of the fire, saw her emitting sparks, described as varying in size from that of a grain of wheat to that of a grain of corn. Such sparks are not shown by the evidence to have been of such extraordinary size as not to have been emitted through a regulation mesh or screen opening. In the absence of such evidence, and considering the clear and positive evidence that the screen was in proper repair, there was no conflict in the evidence, and the general verdict in favor of the appellee was without support.

We conclude, therefore, that the circuit court erred in overruling appellant's motion for a new trial, and its judgment is for that error reversed, with instructions to grant a new trial.

Filed Feb 13, 1894.

### On Petition for a Rehearing.

HACKNEY, J.—We are met with an earnest and able petition for a rehearing in this case, and have given the argument of counsel our careful consideration.

Counsel assume that because of our conclusion that interrogatory numbered one was sustained by the evidence, we held the evidence sufficient to establish the firing of appellee's mill by locomotive 163. By no means do we desire to be so understood; on the contrary there was conflict in the evidence as to whether that locomotive fired the mill or that the fire had originated upon the premises. If it had been our privilege to weigh the evidence, we might have found it difficult to adopt the view that the fire did not originate upon the premises. By that interrogatory and the answer of the jury, we understood, as we now understand, that the locomotive, described generally and without number in the complaint, was numbered 163. The inquiry was as to the identity of the locomotive which it was alleged had fired the mill, and not as to whether that locomotive had fired the mill.

There was much evidence of the character of locomotives in general which had, for months before the occurrence in question, been in use by the appellant, and particularly as to the size, character, and height of the sparks emitted from them, but it was finally settled that 163, if any, was the locomotive that must have fired the mill. But two witnesses testified to seeing that locomotive pass the vicinity of the mill. One said that the sparks emitted were, in size, from "the little end of your finger up to the size of a pea," and that they would go and keep alive about twenty-five feet from the flue. As there was no claim by this witness that such sparks were thrown from the track or to any consider-

able height, we attached no importance to his evidence, the size of the sparks not varying from the sizes of the regulation meshes, namely, "3 by 3, that is three wires and three openings to the inch," about "a quarter of an inch," or the size of "the end of a pencil." The other of said two witnesses testified that the sparks were thrown twenty or thirty feet high, and looked the size of corn grains, and that there was no wind, but the air was heavy enough to carry the smoke. The evidence of this witness, and not that of the former or of those who testified concerning other locomotives and occasions, may be considered in connection with the evidence of McKenzie and Brumennyer as to the elevation to which sparks would ascend with a given speed of the locomotive, and the distance they would be thrown from the track. McKenzie testified that "if the train was running slowly and the sparks got up twenty-five feet, I think the wind would affect them, but, at eighteen miles an hour, I don't think the sparks would go over four feet above the top of the stack, if that." He testified further that if sparks the size of a grain of corn or of a pea were thrown "fully fifty feet away from the track" he would say there was something wrong with the spark arrester or the management of the engine. These two facts are urged, in connection with the evidence that sparks were thrown "twenty or thirty feet high," as disclosing, *prima facie* that there was negligence in maintaining a defective spark arrester or as authorizing the answer to interrogatory numbered thirteen. The first of said facts raises conflict as to the height to which sparks ascended, and not as to the size of such sparks nor as to their having been carried from the track or upon the premises of the appellee. The second of said facts was a conclusion from no hypothesis within any of the evidence in the case, as no witness had testified that

sparks had been thrown fifty feet or any other distance from the track.

The witness Brumennyer testified that if sparks the size of a grain of corn or a pea were thrown "40 or 50 feet in the air there would be something wrong with the spark arrester." Of this fact we may say, as was said of the like conclusion by the witness McKenzie, it is not within the hypothesis of the evidence of the witness who testified to the height to which sparks were thrown by the locomotive in question. Upon these false hypotheses appellee's learned counsel build, as probably did the jury, the conclusion that "the sparks emitted were too large," and that there was "a break in the netting." This false conclusion can not be accepted as raising a conflict with the positive evidence that the spark arrester was not defective.

It is urged now, for the first time, as in conflict with our holding, and in support of the verdict that the fact, testified to by one witness, that it was difficult to remove the netting because it was set in bars which were bolted to the stack by five dozen bolts and that such bars were corroded, as he determined from the presence of cinders on top of the netting, proved that there was an imperfection in the netting. The fact that the bars, which were claimed to be corroded, were not the wires which constituted the netting is manifest, both from inquiries by appellee's counsel and by the answers of the witness. It is also manifest that any difficulty attending the removal of netting is no evidence of the imperfection of the netting. If, as we assume, the bars but supported the netting, we are unable to determine how the fact of their having been corroded permitted sparks larger than the regulation mesh to escape through the netting, and it would certainly not uphold the theory that there was a break in the netting. We are equally at a loss to know,

from the evidence, how the presence of cinders upon the netting authorized the conclusion of the witness that the bars were corroded. Nor can we presume, as appellee's counsel argue, that the cinders upon the netting would, if they had passed out through the regulation meshes, have been shaken back through the netting by the violence of the locomotive in moving. Such presumption would not alone involve size and form, but would stand upon the supposition that such cinders had been carried a considerable distance with such violence as to shake them back.

It can not be forgotten that the burden of the issue of defective appliances rested upon the appellee, and that such burden could not be discharged by merely suggesting possibilities or raising vague doubts, from which reasonable and probable inferences of fact could not legitimately be drawn in contradiction of the positive and unequivocal evidence that no defects existed.

No one claimed and no evidence authorized the inference that "too many sparks were emitted." No evidence was given that sparks as large as a grain of corn could not have passed through a regulation mesh. No evidence was given that the netting was broken, and the conclusions of the jury, as answered to the thirteenth interrogatory, have no support, but stand upon unjustifiable inferences and upon unwarranted hypotheses. We did not hold and do not now hold, as counsel suggest, that the mere failure of proof to support an answer to an interrogatory requires reversal, but in this case it is held that a fact, found by the special answers, being indispensable to the support of the general verdict but not being supported by the evidence, establishes the weakness of the general verdict and requires its overthrow.

The petition is overruled.

Filed Oct. 17, 1894.