## YANKTON FIRE INS. CO. v. FREMONT, E. & M. V. R. CO.

1. Where, at the close of the plaintiff's evidence, the defendant moves the court to direct a verdict in his favor, which is denied, and, no evidence being offered by the defendant, the court, on motion, directs a verdict for the plaintiff, and the defendant does not request the court to submit the case to the jury, it is not error for the court to direct a verdict for the plaintiff, if there was sufficient evidence to support such verdict.

2. The evidence in this case examined, and found sufficient to support the verdict directed in favor of the plaintiff.

(Syllabus by the Court.   Opinion filed Oct, 1, 1895.)

Appeal from circuit court, Pennington county.   Hon. WILLIAM GARDNER, Judge.

Action for damages caused by fire.   Judgment for plaintiff, and defendant appeals.   Affirmed.

The facts are stated in the opinion.

*James W. Fowler*, for appellant.

In an action for damages caused by sparks from a locomotive, the plaintiff must not only prove that the fire may have proceeded from the locomotive, but must show by reasonable affirmative evidence that it did so originate.   White v. Railroad, 1 S. D. 330; Marvin v. Railroad, 79 Wis. 140; Atkinson v. Goodrich, 60 Wis. 141; Randall v. Railroad, 109 U. S. 478; Railroad v. Munson, 81

U. S. 442; Pleasants v. Fants, 89 U. S. 116; Herbert v. Butler, 97
U. S. 319; Bowditch v. Boston, 101 U. S. 16; Griggs v. Houston,
104 U. S. 553; County v. Beal, 113 U. S. 227; Baylis v. Ins. Co.,
113 U. S. 316; Schofield v. Railroad, 114 U. S. 618; Higgins v.
McCrea, 116 U. S. 683; Marshall v. Hubbard, 117 U. S. 415;
Goodlett v. Railroad, 122 U. S. 411; Railroad v. Bank, 123 U. S.
733; Kane v. Railroad, 128 U. S. 94; Railroad v. Marton, 32 Pac.
345.   To warrant a finding that negligence, or an act not amount-
ing to wanton wrong, is the proximate cause of an injury it must
appear that the injury was the natural and probable consequence of
the negligence or wrongful act, and that it ought to have been
foreseen in the light of the attending circumstances.   Railroad v.
Kellogg, 14 Otto 258; 2 Woods Railroad Law, 1372; Railroad v.
Garett, 39 Md. 115; Railroad v. Constable, 39 Md. 149; Perry v.
Railroad, 51 Cal. 578.   In an action for damages where negli-
gence is charged, the question whether the negligent act of the
defendant was the proximate cause of the destruction of plaintiff's
property is a question of fact for the jury, to be decided from the
circumstances of the case.   Fent v. Railroad, 69 Ill. 349; Henry
v. Railroad, 50 Cal. 183; Smith v. Railroad, 5 C. P. 98; Poeppers
v. Railroad, 67 Mo. 715; Daggett v. Railroad, 78 N. C. 305; Rail-
road v. Muthersbaugh, 71 Ill. 572 Stuart v. Hawley, 22 Barb. 619;
Calkins v. Barges, 44 Barb. 424; Batchelder v. Hogan, 18 Me. 32.

   *Wood & Buell,* for respondent.

   A fire that starts on a railroad company's right of way soon
after a locomative has passed that place and spreads to the injury
of some one other than the company raises a presumption of neg-
ligence upon the part of the defendant company, so as to cast the
burden of proof upon it, showing that it was free from fault.
Johnson v. Railroad, 48 N. W. 227; Graw v. Railroad, 46 N. W.
972; O'Neill v. Railroad, 22 N. E. 217; Kelsey v. Railroad, 1 S.
D. 80; White v. Railroad, 1 S. D. 326.   The court may at any time
direct a verdict when the facts are undisputed, and the jury should
follow such direction.   Longley v. Daly, 1 S. D. 257; Peet v. Ins.
Co., 1 S. D. 462; Star v. Matheson, 14 N. W. 107; Clancy v. Reis,

31 Pac. 971; Coffin v. Hutchenson, 30 Pac. 424; Gildershere v. Atchinson, 27 Pac. 477; McCormick v. Holms, 21 Pac. 108; Howe v. Schweinburg, 21 N. Y. 469; Moore v. McKinley, 21 Alt. 749. When at the close of the evidence in the trial court, both parties request a verdict in their favor respectively, thereby consent for the court to decide the questions of law and fact involved, and are estopped from raising the point on appeal that there were questions of fact that should have been passed upon by the jury. Gould v. Lipman, 21 N. Y. 464; Dillon v. Cockcroft, 90 N. Y. 649; Omes v. Dauchey, 82 N. Y. 443; Kockler v. Addler, 78 N. Y. 287; An insurance company paying a loss for which a railroad company is liable becomes subrogated to all the rights of the insured. 2 Am. & Eng. Enc. of Law, 837; Railroad v. Association, 18 S. W. 47; Deming v. Company, 17 S. W. 317; Pelzer v. Ins. Co., 15 S. E. 562; Railroad v. Pullman, 139 U. S. 79; Hardman v. Brett, 37 Fed. 803; Hayward v. Cain, 105 Mass. 213, Ins. Co. v. Railroad, 28 N. W. 64. Ins. Co. v. Railroad 73 N. Y. 399; Phœnix v. Parsons, 37 N. Y. 874.

CORSON, P. J.   This was an action brought by plaintiff, as assignee of one Henry Behrens, whose property it is alleged was destroyed by fire caused by the negligence of the defendant.   Verdict and judgment for plaintiff, and the defendant appeals.

At the close of plaintiff's evidence the defendant moved the court to direct a verdict in its favor.   This motion was denied, and exception taken.   The defendant offering no evidence, the plaintiff moved the court to direct a verdict in its favor, which motion was granted, and defendant excepted.   Only two questions are, therefore, presented for our decision:   First.   Did the court err in denying defendant's motion to direct a verdict in its favor? Second.   Did the court err in granting the motion of the plaintiff for the direction of a verdict in its favor?

A brief statement of the facts may be necessary to a proper understanding of the questions presented.   Henry Behrens, the plaintiff's assignor, was the owner of a ranch, with buildings and

other improvements thereon, situated about 8½ miles from the railroad. The buildings and improvements were insured by the plaintiff company. On October 27, 1888, these buildings and improvements were destroyed by fire, or partially so, and the plaintiff adjusted the said loss at $600, and paid the same. The fire that destroyed or injured the buildings also destroyed a large quantity of hay, fences, etc. Behrens claimed, and the plaintiff now claims, that the fire that burned the buildings, improvements, hay, etc., was caused by the negligence of the defendant by the setting of a fire, near its right of way, by a passing engine. The defendant settled with Behrens for a part of his loss, deducting the $600 paid upon the insurance by the plaintiff. Behrens assigned to the plaintiff his claim against the defendant for the $600 not paid by that company. When the plaintiff had concluded its evidence and rested, the defendant made the following motion: "The plaintiff having rested its case, the defendant now moves the court to direct a verdict for the defendant for the reasons following, to wit: First. Because the plaintiff has totally failed, upon the undisputed evidence in the case, to make out a *prima facie* case against the defendant herein, because there is no proof in this record that the fire that originated at the point testified to by the witness Warner and Mrs. Birnbaum is the same fire that burned over the premises belonging to the witness Henry Behrens, and the record fails to show that the fire that started at a point near the railroad track, designated by the witnesses and every witness in this case, is the one that burned over the premises of the witness Behrens; and for the further reason that there is no evidence in the case showing that the railroad company had notice of the assignment and subrogation of the insurance company before the payment of the claim was made to it, and that the defendant, at the time of the payment of the claim, had no notice that there had been any transfer of the claim arising from any loss by this fire." The ruling of the court upon this motion presents the first question to be considered.

It does not seem to be seriously questioned by the learned counsel for the defendant that a fire was started near the defend-

ant's right of way, by one of the passing engines, on the afternoon in which Behrens' property was burned, and that it spread to a considerable extent in a southeasterly direction; but the counsel contend that the evidence was insufficient to prove that it caused the loss of Behrens' property.   The evidence tending to prove that the fire extended from the point where it originated near defendant's railroad to the premises of Behrens does not seem to be as clear and satisfactory as it apparently might have been made, but we are inclined to the opinion that it was sufficient to make out a *prima facie* case, and was such as would have justified a jury in finding that the fire having its origin at the railroad was the same fire that burned the Behrens property, and that this fire was the proximate cause of Behrens' loss.   Behrens, a witness on the part of the plaintiff, on his direct examination testified, in substance, as follows:   That when he crossed the railroad track, going home from Rapid City; at about 6 o'clock, he saw the prairie smoking, and he could see the blaze in the haystacks; and when he came to his place it was all ablaze,—the haystacks were all in a blaze.   He further testified that he should judge the starting point was about 50 feet from the railroad track, and it ran southeast, and about eight and one-half miles to his place, from the railroad track.   He further says: "I seen this fire the same evening it occured.   I seen it from the crossing.   I didn't go to see how it started until Sunday afternoon.   I visited the place the following day.   That was the same fire I saw the day before, on my way to the ranch, —the same fire that destroyed my buildings."   On his cross-examination he testified as follows: "I was here in Rapid on the day of the fire, at work in my place of business.   I left here between two and three o'clock in the afternoon to go down to my ranch.   I crossed the railroad track south of Brennan.   I should judge it was about half past five or six when I got to the crossing of the railroad track.   The sun must set at about six at that time of year.   I did not look that night to see where the fire started.   I crossed the track about 20 or 30 rods from where the fire started. I kept the road all the way.   It was on the east and north of the road;

it was all burning and smoking when I got there.   I didn't go over the burnt district.   Kept to the road all the way.   Seen but one side of the burnt district.   I was not at my place when the fire first came there.   \*   \*   \*   I went the next day to see where it came from.   I don't think there was any other fires, for the wind was blowing about 50 miles an hour.   Don't know of my own knowledge how many fires were started; or where they were started. My testimony is entirely based upon the appearance of the country as I found it after it had been burnt over.   I would swear it was the same fire.   Q. How could you swear that?   A. Because there was a starting point, and it followed along the way the wind would blow it.   The wind would carry it right down to my place.   My ranch is southeast from the point where the fire started.   The wind was blowing the same way,—in the direction of my house." It will be observed that he swears it was the same fire that had its origin on the line of the railroad.   Mr. Volney Warner, also a witness on the part of the plaintiff, testified as follows: "I live on Dry Creek.   Am a farmer.   I heard Behrens testify here. I recollect the fire he had reference to.   It commenced over near my place; on Charley Seipe's place, about a half a mile from my place.   The defendant's railroad track is about 30 or 35 feet from where the fire commenced.   I was in sight of the starting place. I went to that point that day.   Was with them, and helped put the fire out.   I know where Behrens' place is located.   It is eight miles from the place where the fire broke out.   The wind was blowing from the northwest, and went toward the southeast.   I followed it down to James Crockett's place.   That is about three miles and a half.   Of my own knowledge, I don't know how much further it went.   Q. Do you know that the fire that destroyed Bayliss' hay is the same fire that destroyed Behrens' ranch?   A. I could not swear positively it was.   I am satisfied it was.   The fire went down that way, and appeared to go there.   Q. Do you know that it was the same fire that he testified to as the fire that destroyed Behrens' ranch?   A. Yes, sir.   Q. Was there more than one fire that day?   A. No, sir.   Q. I will ask you, if you, since that time,

followed the burnt district down to the Behrens ranch.  A. I went down to the county commissioner's, Jim Crockett's at the time of the fire, to fight the fire.   I don't remember any fire near the railroad track except this one.   That was the only fire on the east side of the railroad that year." It will be observed that Mr. Warner says he followed the fire 3½ miles to Crockett's place, and that the fire went down in the direction of Behrens' ranch, and "appeared to go there," and that there was only one fire that year on the east side of the railroad.   Mr. Behrens, being recalled, testi-fied: "How many fires, if you know, occurred that fall?   A. That was the only fire, and the identical fire.   I know that fire passed Crockett's place.   Q. That was the fire that passed over this country down to Behrens' place.   A. Yes, sir."   Mr. Bayliss, in his evidence in regard to the fire that started at the railroad and the one that destroyed Behrens' property, testified on cross exami-nation as follows: "Q. Do you know it was the same fire?   A. I believe so.   Everybody in our country thinks so.   Q. Do you know whether it was the same fire or not?   A. Where it com-menced, and the way it burned, it seemed so, I could not say I know it.   Q. Would you say it was the same fire?   A. The cir-cumstances are such that I do know it."   It will thus be seen that he testified that the circumstances were such that he knew it was the same fire.   The circumstances he referred to were not called out but the evidence was not stricken out, nor any motion made to strike out the same.   Mr. Birnbaum testified: "I reside on Dry Creek, about nine miles from here.   I saw the fire in controversy. It was about three o'clock in the afternoon.   I went out to fight the fire.   *   *   *   The fire ran down in the direction of Behrehs'. I don't know if it went as far as Behrens' place.   I was not along the right of way of the railroad at the point where the fire started. I seen from the house where the fire run along."   As to the origin of the fire, Mrs. Birnbaum testified as follows: "I reside on Dry Creek, half a mile below Brennan, about eighty rods from the rail-road track.   I can tell about this fire in October, 1888.   I don't know the date.   I was standing outdoors, and saw the train go by,

and then saw the fire start up right away. I was looking at the train all the time, and saw the fire start up. It was a freight train. When the train went by, I saw the fire start right up. I looked up, and saw the fire burn. I didn't see nobody there but the section men. I was not over where the fire burned."

It will be observed, therefore, that there was evidence tending to prove that a fire was caused by defendant's engine, near its line of road. This was sufficient to raise the presumption of negligence on the part of the defendant. Kelsey v. Railway Co., 1 S. D. 80, 45 N. W. 204. The evidence on the part of plaintiff also tended to prove that the fire thus started extended in a southeasterly direction to the property of the said Behrens, and destroyed the same. The fire was followed $3\frac{1}{2}$ miles in that direction, and there was no other fire that day, and no other fire that fall on that side of the railroad; and three witnesses—Behrens, Bayliss, and Warner—state, the former positively, and the latter in effect, that the fire so started at the railroad extended during the same afternoon to the Behrens property. There was not only proof that the fire may have caused the destruction of Behrens' property, but that it did in fact do so. In the absence of any conflict in the evidence this would have been sufficient to justify a jury in finding a verdict for the plaintiff.

The second point made by counsel for defendant in his motion to direct a verdict is also untenable, as the evidence clearly shows that the defendant, when it settled with Behrens for a part of his loss, did so with the full knowledge that $600 of his claim had been paid him by the plaintiff. Behrens, in his evidence, shows that in this settlement made by him with the defendant the $600 was deducted from the amount to which he was entitled. He says: 'A. He notified me I should settle without losing anything. I should collect the insurance first. He said if I could do that he could probably settle for the balance, which he did. He said he would do nothing until the insurance company was settled with, so I went ahead, and settled with the company." •"A. The notice of assignment I gave Clark was verbal. That was in my store,

when we were adjusting the claim. That was after the insurance company had paid me $600 that was covered by its policy; and after that I didn't hold the railroad company any more, and they would have to settle with the insurance company. He said: 'All right. I will stand the insurance company a fight.' We deducted the $600 from the amount of the loss, and settled with them for the balance. The assignment was made to the insurance company in 1889. It was the spring after the fire occurred." We conclude there was no error in the court's ruling denying defendant's motion to direct a verdict in its favor.

The defendant introduced no evidence, and thereupon the plaintiff, as before stated, moved the court to direct a verdict in its favor. This motion was granted, and a verdict directed, and an exception taken. This ruling of the court is assigned as error. And counsel for appellant contends, that: "Without the waiver of the right of a trial by jury by consent of the parties in the manner provided by Comp. Laws, section 5065, the court errs if it substitutes itself for the jury. Hence, after defendant's motion to direct a verdict in its behalf had been overruled, the defendant was then entitled to have the evidence in this case submitted to the jury, and to have the benefit of such conclusions of fact as the jury might justifiably have drawn." This question presents more difficulty, but constituting an important element in this case is the fact that appellant moved the court to direct a verdict in its favor, and did not request the trial court to submit any issue to the jury. Both parties, by their respective motions, in effect admitted there were no disputed facts to be submitted to the jury, and virtually agreed to submit the questions of both law and fact to the judge; and under such circumstances, if there is evidence sufficient to uphold the decision, it is not error for the court to direct a verdict. This seems to be the view taken by the court of appeals of New York. In Dillon v. Cockroft, 90 N. Y. 649, that court says: "There was no error in directing a verdict for the plaintiff. The defendant's counsel did not ask to go to the jury upon the facts, but made a motion to dismiss the complaint, which was denied before

the plaintiff moved that the court direct a verdict. The motion to dismiss the complaint was equivalent to a request to direct a verdict in favor of the defendants. Such being the case, the parties, by the motions made, each one of them, virtually agreed to submit the question of fact to the judge, and, under the circumstances, if there is any evidence to uphold the decision, it is not error. It is well settled that where the defendant moves for a nonsuit, or rests his defense upon questions of law, and does not request to go to the jury, and his motion is denied, or the law held adversely to him, he is estopped from raising the point upon appeal that there were questions of fact which should have been passed upon by the jury. Ormes v. Dauchy, 82 N. Y. 443. See, also, O'Neill v. James, 43 N. Y. 84; Trustees v. Kirk, 68 N. Y. 459, 464; Winchell v. Hicks, 18 N. Y. 558." And in Grigsby v. Telegraph Co. (S. D.) 59 N. W. 734, this court, speaking through Mr. Justice KELLAM, says: "We do not think that, upon the record presented, there was any question for the jury; but, if there was, it would seem that appellant waived it. It moved the court to direct a verdict in its favor. This was a concession that there was no question in the case but one of law, which it was the duty of the court to decide. The court adopted the very theory which appellant asked it to adopt, and took the case from the jury. That it decided the law question adversely to it ought not to put appellant in position to now assert, as against the ground and theory of his motion, and without any request to have the case submitted to the jury, that there was a question of fact for the jury, and that it was error for the court to grant its motion, and decide the case as a question of law only. In Barnes v. Perine, 12 N. Y. 18, the facts as to this question were similar to those here presented. There the defendant moved the court to direct a verdict in its favor. It overruled the motion, but directed a verdict for plaintiff. In answer to appellant's claim on appeal that the case should have been submitted to the jury, the court says: 'But having treated the questions as purely legal, and acquiesced in the disposal of them by the court as such, he cannot now be heard to object that facts were involved which should have been decided by the jury."

We have sufficiently, shown, we think, that the record discloses evidence that would clearly have justified a jury in finding a verdict for the plaintiff. This evidence, in the absence of any testimony or theory on the part of the defendant accounting in any manner for the destruction of Behrens' property that afternoon by fire, other than the one having its origin, as detailed by the witnesses, near the line of defendant's railway, and which as we have seen was started by the presumed negligence of the railway company, is such that a jury of reasonable men could have drawn but one inference or conclusion therefrom. We have examined the cases of Megow v. Railway Co. (Wis.) 56 N. W. 1099, and Marvin v. Railway Co. (Wis.) 47 N. W. 1123, relied on by appellant's counsel, but those cases presented very different questions from those in the case at bar. In those cases numerous back fires had been set, and several days had intervened between the fire caused by the defendant company and the destruction of the property for the loss of which the actions were brought. In the opinions the difficulty of showing that the fires complained of were the proximate cause of the loss is fully explained, and the reasons given why the plaintiffs could not recover. But in the case at bar no such difficulty appears. There was no evidence in this case of any back fires having been set, and there was no change in the wind shown between the time of the fire having its origin on the line of defendant's road and the burning of Behrens' property, two or three hours later, on the same afternoon. No theory is even advanced by counsel for defendant that would acount for the burning of Behrens' property, unless it was caused by the fire having its origin at the railroad track. We conclude, therefore, that the court below committed no error in directing a verdict for the plaintiff. The judgment of the circuit court is affirmed.