## CHICAGO & ERIE RAILROAD COMPANY *v.* KREIG.

[No. 2,658. Filed May 24, 1899.]

PRACTICE.—*Motion to Make Complaint More Specific.*—*Appeal and Error.*—The overruling of a motion to make the complaint more specific is not reversible error, where it is not reasonably probable that the defendant was deprived, to his prejudice, of some material and specific information which he clearly demanded by his motion. *pp. 395, 396.*

SAME.—*Motions.*—*How Construed on Appeal.*—As against the action of the trial court, motions must, on appeal, be construed most strongly against the proposers thereof. *p. 396.*

PRACTICE.—*When General Verdict Controls Answers to Interrogatories.*—Where answers to interrogatories propounded to a jury are returned with the general verdict, the verdict must control unless there be answers, which, being uncontradicted by other answers, can not be reconciled with such general verdict. *pp. 396, 397.*

SAME.—*Answers to Interrogatories Propounded to Jury.*—*Motion for Judgment On.*—In considering a motion for judgment on the answers to interrogatories, notwithstanding the general verdict, the court cannot give any effect to items of evidence stated in the answers. *p. 399.*

Chicago, etc., R. Co. *v.* Kreig.

RAILROADS.—*Fires.*—*Damages.*—*Evidence.*—On the trial of an action against a railroad company for damages caused by fire ignited by sparks from a passing locomotive, evidence is admissible to show that other fires adjacent to the right of way sprung up after the passing of the particular locomotive. *pp. 396-400.*

RAILROADS.—*Fires.*—*Damages.*—*Expert Testimony.*—On the trial of an action for damages caused by fire ignited by sparks from a passing locomotive, there being evidence to which the hypothetical questions were pertinent, an expert may testify as to the size of sparks which could be seen at a given distance in the daytime, and whether a locomotive, equipped in a certain way, would emit sparks with such life that they would carry fire a given distance, if it was being operated in weather ordinarily prevailing in the month of March, and whether a locomotive was properly equipped which would, in going six miles, set out as many different fires at certain points along the right of way. *pp. 400, 402.*

SAME.—*Fires.*—*Damages.*—*Proximate Cause.*—Where, in an action for damages caused by fire set by a passing locomotive, there is evidence showing that the fire was negligently started in the premises adjacent to plaintiff's barn, and passed directly or indirectly as a natural consequence, without the intervention of any independent and responsible human agency, to plaintiff's property, as an ordinarily prudent person would have regarded as reasonably possible under the state of existing wind and weather, the evidence is sufficient to uphold a finding that the escape of the fire from the locomotive was the proximate cause of the burning of plaintiff's property. *p. 405.*

From the Fulton Circuit Court.    *Affirmed.*

*G. W. Holman, R. C. Stephenson, W. O. Johnson* and *J. S. Slick,* for appellant.

*Essick & Metzler, H. C. Pettit* and *T. L. Stitt,* for appellee.

BLACK, J.—In the complaint of the appellee against the appellant there were two paragraphs. It is pointed out by counsel for the appellant that the case proceeded on the first paragraph, and all assignments of error having relation to the second paragraph are expressly waived. Therefore we will not consider such alleged errors.

In the first paragraph it was shown, in substance, that the appellant on the 24th of March, 1895, in running its trains

and locomotives along its right of way, "carelessly, negli-
gently, and wrongfully failed and omitted to use safe and
sufficient spark-arresters, or other proper appliances to pre-
vent the emission of sparks and fire from said locomotives,
but carelessly and negligently permitted them, and so opera-
ted them, as to cause them to emit sparks and fire upon and
into the premises upon which" stood a certain large frame
building and barn, close to appellant's right of way, on the
premises next adjoining a certain farm owned by the appel-
lee, "and upon and into said building and barn, whereby the
same, with its contents, was ignited and totally destroyed,
and whereby, and by reason thereof, and of said fire from
said locomotives, sparks and fire were carried therefrom, and
emitted into and alighted upon" the barns, premises, and
property of the appellee (described) on said farm of the
appellee, "by reason whereof the same were ignited and
totally destroyed with all said contents of said buildings and
improvements." The values of the buildings and other prop-
erty of the appellee so destroyed were stated. It was alleged
that "said fires, loss, and damage were caused without fault
upon the plaintiff's part, but wholly by said fault
and negligence of defendant, and its said defective ma-
chinery; that defendant negligently permitted said fire so to
spread to plaintiff's property; that plaintiff has no knowledge
of the mechanism of locomotives, and cannot therefore set
out more specifically what mechanism could and should have
been used." The damages were laid in the sum of $5,000,
etc.

The court overruled appellant's motion to make this para-
graph more specific by stating therein "the engine of what
train it was that started the fire complained of." This mo-
tion was itself indefinite. If it had been sustained, in what
respect would the appellee have been required to change the
complaint? A particular engine might have drawn a num-
ber of trains on the day in question, and the designation of
one of them might not have been of any advantage to the

appellant.    The requirements of the motion might have
been complied with by designating a west-bound train as the
one whose engine started the fire, and it is not apparent that
this would have served any useful purpose for the appellant.
The motion should have specified in what respects the appel-
lant wished the engine to be identified, in such a manner that
it would be apparent that the sustaining of the motion would
be beneficial.    It already appeared in the complaint that the
fire was caused on a certain day by sparks and fire from the
engines running by the premises in question.    Can it be said
that there was a refusal, prejudicial to the appellant, to re-
quire the train to be designated in some certain manner?
Unless the motion to make more specific ought to be sus-
tained in the form in which it is made, there can be no
available error in overruling it.    Where it is claimed that,
for the overruling of a motion to make a complaint more
specific, we should reverse a judgment rendered upon a ver-
dict on the trial of an issue formed on that pleading, it should
appear to be reasonably probable that the defendant was
deprived, to his prejudice, of some material and specific in-
formation which he clearly demanded by his motion.    The
judgment should not be reversed upon such a ground be-
cause the trial court did not indulge in a construction of the
motion favorable to the mover beyond the strict meaning of
its terms.    As against the action of the trial court, motions,
as well as pleadings, strictly so called, must by us be con-
strued most strongly against the proposers thereof.

It is contended that the court erred in overruling a de-
murrer, for want of sufficient facts, to the first paragraph of
complaint.    The complaint is characterized in some por-
tions thereof by a seeking after brevity, yet, when all its aver-
ments are considered together, and given their ordinary and
legitimate significance, we think a cause of action sufficiently
appears.    A complaint founded on negligence is not in-
sufficient on demurrer because of failure to state therein in
detail the facts constituting negligence.

The court overruled the appellant's motion "for judg-
ment in its favor upon the interrogatories herein, notwith-
standing the general verdict of the jury in favor of the
plaintiff." If this be treated as equivalent to a motion for
judgment upon the answers to the interrogatories, we do not
find the answers sufficient to override the general verdict.
Our attention, in this connection, is specially called to the
interrogatories and answers relating to the locomotive in
question, the operation thereof, and its spark-arrester. By
the general verdict, the jury determined in favor of the ap-
pellee all the material questions involved in the issue formed
by a denial of the complaint, and the general verdict must
control unless there be answers, which, being uncontradicted
by other answers, cannot be reconciled with the general ver-
dict under any supposable evidence admissible under that
issue. It is not necessary for the appellee that the answers
to interrogatories should support the general verdict, but it
is necessary for the appellant that they override it.

It was specially found that the engine by which the fire
was communicated to the barn first burned, on the premises
of Dr. Case, adjoining the appellee's land, was operated by a
skilled engineer, and it was also found that there was no evi-
dence that the engine was properly operated. There might
have been, notwithstanding these findings, evidence from
which the jury might have found that the engine was not
properly operated. There were findings showing the kind
of engine, and the kind of smoke-stack and spark-arrester,
and that they were of the approved kinds in general use on
first class railroads. In answer to interrogatory thirty-two,
the jury found that the spark-arrester was not in a good state
of repair, and in answer to interrogatory thirty-three, they
stated that there was no proof furnished as to the manner of
defect, only that the engine emitted sparks that were carried
a distance of eighty feet from appellant's track, and upon
lands adjoining its right of way, igniting rubbish at various
points. There were other findings,—that Dr. Case's prem-

ises were set on fire from the smoke-stack of this locomotive; that the spark by which this fire was so set alighted about thirty feet north of the north line of appellant's right of way; that this engine on that day emitted from its smoke-stack sparks and fire which retained life and set fires to adjacent premises at places from sixty to one hundred feet from appellant's track (among them the premises of Dr. Case); that, if a locomotive be equipped with the best known and approved spark-arrester, such as are in common use, the sparks which escape therefrom lose vitality and life at from twenty to forty feet from the smoke-stack. In *Indianapolis, etc., R. Co.* v. *Paramore*, 31 Ind. 143, the action was for the destruction by fire of a quantity of plaintiff's wood through the negligence of the railroad company. The fire originated "close to the track," but the evidence did not show how it originated, and the only evidence from which an inference that it originated from a locomotive could be drawn was that two trains had passed but a short time before the fire was discovered; but there was no evidence of any defect or imperfection of machinery, or of want of care or prudence on the part of those having charge of the trains. It was held that the mere fact that a fire is caused by a locomotive does not raise a presumption of negligence. This case, having been criticised in *Pittsburgh, etc., R. Co.* v. *Hixon*, 79 Ind. 111, was approved in *Pittsburgh, etc., R. Co.* v. *Hixon*, 110 Ind. 225, and again in *Chicago, etc., R. Co.* v. *Ostrander*, 116 Ind. 259. See, also, *Lake Erie, etc., R. Co.* v. *Gossard*, 14 Ind. App. 244, 247; *New York, etc., R. Co.* v. *Baltz*, 141 Ind. 661. However well the doctrine of the Paramore case may be established, yet the case at bar is not controlled by this doctrine. Here the answers to interrogatories show that the ignition of the Case premises was caused by a spark from the smoke-stack of a particular locomotive, and do not show facts necessarily inconsistent with the negligence of the appellant which was found in the general verdict.

In answer to interrogatory thirty-two, the jury found

Chicago, etc., R. Co. *v.* Kreig.

the material fact that the spark-arrester was not in a good state of repair. If, as argued by appellant, there was conflict between this answer and the answer to the next interrogatory, then it is well settled that answers to interrogatories which are conflicting cannot override the general verdict. *Grand Rapids, etc., R. Co.* v. *McAnnally,* 98 Ind. 412; *Shuck* v. *State,* 136 Ind. 63; *Heltonville Mfg. Co.* v. *Fields,* 138 Ind. 58. Furthermore, the answer to interrogatory thirty-three, on which appellant relies, sets forth matter of evidence, and not a fact within the purpose of the statute authorizing the propounding of interrogatories to the jury; and in considering a motion for judgment on the answers to interrogatories, notwithstanding the general verdict, the court can not give any effect to items of evidence stated in the answer. *Blacker* v. *Slown,* 114 Ind. 322; *Kirkpatrick* v. *Reeves,* 121 Ind. 280; *Gates* v. *Scott,* 123 Ind. 459.

Objection is urged to the testimony of a number of witnesses showing other fires at a number of different places adjacent to the railway on the day of the fire which consumed appellee's property; the objection in some of the instances being that the evidence was not within the issues, and in one instance being that it was not competent to show other fires. The consideration of such evidence by the jury was eventually confined to such fires as sprung up after the passing of a particular locomotive, which by subsequent testimony of the appellant's witnesses was shown to be the one by which the fire in controversy was communicated. There was no error in the admission of such evidence. It tended to prove that the fire in controversy was caused by a locomotive, and also negligence of the defendant with respect to the locomotive from which the fire came which destroyed appellee's property. *Evansville, etc., R. Co.* v. *Keith,* 3 Ind. App. 57, and cases cited. In *Chicago, etc., R. Co.* v. *Ostrander,* 116 Ind. 259, it was held that the jury might infer negligence in setting fire to the plaintiff's property from evidence as to the unusual size and great number of sparks

which were permitted to escape from the engine. In *Louisville, etc., R. Co.* v. *McCorkle*, 12 Ind. App. 691, where there was evidence that on the occasion in question, immediately after the train passed, the fire was discovered, and that the same engine on that day, and on other days about the same time, caused fires on and adjacent to the defendant's right of way, it was said that the evidence was certainly sufficient to warrant the jury in the inference and finding that the defendant's locomotive did the mischief. In that case it was said that where there is evidence to prove that a locomotive, day after day, emits fire, igniting adjacent premises for distances from 50 to 150 feet from the track, the jury may infer negligence upon the part of the company with respect to the appliances; and it was held that where there was evidence that the spark-arrester was in good condition, and also evidence that different fires started on and adjacent to the right of way just after the engine passed, under circumstances tending to show negligence, the question of negligence should be submitted to the jury. See, also, *Louisville, etc., R. Co.* v. *Lange*, 13 Ind. App. 337; *Lake Erie, etc., R. Co.* v. *Gould*, 18 Ind. App. 275; Jones on Evidence, sections 163, 164, and cases cited.

A witness (one Wolford) testifying on behalf of the appellee as an expert, whose connection with the mechanical and operating departments of railroads, and whose knowledge of the construction of locomotive engines, and experience in testing them as to their working capacity and as to the emission of sparks, were shown, and of whom it was shown that it had been among his personal duties to watch for sparks, was asked and answered certain questions, to which the appellant objected, as follows: Question. "You may state to the jury how large, in your judgment, a spark or cinder would be that could be seen from ten to twenty rods, in the daytime, passing from the mouth of the smoke-stack of a locomotive hauling a train." Answer. "In case of a real live spark, you might see it readily the size of a grain of rye or wheat, before

it died away." Question. "Mr. Wolford, you may state to the jury whether a locomotive in operation, and equipped with appliances, to wit, a deflecting plate and netting and spark-arrester, all so placed in that locomotive according to the usual and ordinary construction of locomotives used by the best roads of the country, and in which the netting was one-sixteenth of an inch wire, with from three to four strands to the inch, and properly attached to the boiler sheets, would emit sparks with such life that they would carry fire to points from 50 to 100 feet from the company's track, if the locomotive were being operated during the weather ordinarily prevailing in the month of March." Answer. "No, sir." Question. "I will ask you, Mr. Wolford, whether or not, in your judgment as an expert, a locomotive in passing over six miles of territory, and setting out that many different fires at different points from 50 to 100 feet from its track, in the ordinary weather prevailing in the month of March, was equipped with suitable and usual and ordinary spark-arrester and appliances for the preventing of the emission of sparks, such as used by the best roads." Answer. "No, sir." There was evidence to which all these questions and their hypotheses were pertinent. Whatever might be thought as to the propriety of the first of these questions, the answer was not harmful to the appellant. It appeared from the evidence that the size of the standard meshes was about three-sixteenths of an inch,—being three or four to an inch, —that diagonally the mesh was about one-fourth or five-sixteenths of an inch, and that it would, and an expert testifying for the appellant said it would, take a good gale to blow a spark from an engine so equipped thirty feet from the center of the track, and in doing that there ought not to be any vitality left, and if there was, it would have to be as large as a walnut. In *New York, etc., R. Co.* v. *Baltz,* 141 Ind. 661, it was held that there was no conflict between the evidence that the screen was in proper repair, and evidence that the

locomotive emitted sparks varying in size from that of a grain of wheat to that of a grain of corn, in the absence of evidence showing such sparks to have been of such extraordinary size as not to have been emitted through a regulation mesh or screen opening. But without regard to the question as to the harmfulness of this answer, we can not agree that there was reversible error in the overruling of the objections to these questions. The evidence showed intricate and combined means for preventing the emission of fire from the smoke-stacks of locomotives, and the subject-matters of these questions were clearly of such character that a qualified expert could aid the jury by his answers thereto. The evidence all had relation to the operation and efficiency of a certain kind of device of whose mechanism, utility, and capacity the witness was qualified to speak by his occupation, education, and experience. The ordinary juror would not know so well as such an expert the effect of a spark-arrester of a standard kind, or the indications of its being in good or bad repair afforded by the size of the sparks escaping and the space over which they would fly while retaining vitality, or the distance to which they could be seen.

In *Cleveland, etc., R. Co.* v. *Scantland*, 151 Ind. 488, where it was contended on behalf of the railroad company that the jury ought to have accepted evidence introduced to show that the spark-arrester had been inspected frequently · and properly before the time of the fire, and that it was then in good repair and correctly adjusted, the court, after stating evidence showing broken places in the wire, said: "It was shown that sparks of the size of large grains of corn had been thrown from the smoke-stack to the distance of 120 feet; and one of the appellant's witnesses answered that with proper spark-arrester appliances, even with the wind blowing in the most favorable condition for carrying sparks, they could not be carried to a distance of more than thirty or forty feet, and still retain fire enough to kindle combustible material. He further said that in damp atmosphere the

tendency of sparks is to fall quicker to the ground. If to the foregoing evidence given by appellant's witnesses we add the testimony of appellee's witnesses relating to the same subject, we must conclude that there was competent and sufficient evidence adduced to support the findings returned by the jury." Amongst other matters in the special verdict on which judgment was rendered in that action for negligence against the railroad company, which was affirmed on appeal, it was found that there were holes and broken places in the nettings, and that in consequence fire was thrown out of the smoke-stack, many of the sparks being of the size of large grains of corn, and some as large as the end of a man's finger. In *New York, etc., R. Co.* v. *Baltz,* 141 Ind. 661, the Supreme Court placed importance upon observations of experts that a break in the netting of a spark-arrester causes the sparks to concentrate at the point of such break, and to pass out only at such break; and evidence of a witness that, if sparks the size of a grain of corn or a pea were thrown fully fifty feet away from the track, he would say that there was something wrong with the spark-arrester or the management of the engine, was excluded from controlling influence upon the ground only that this was a conclusion from no hypothesis within any evidence in the case, as no witness had testified that sparks had been thrown fifty feet, or any other distance from the track. In *Evansville, etc., R. Co.* v. *Keith,* 8 Ind. App. 57, an expert was permitted to testify of a device to prevent the emission of sparks, that, with proper use and handling, he had never known of a fire resulting from an engine so equipped.

The evidence upon the question as to the negligence of the appellant in the escape of the fire from the engine, and the consequent ignition of the barn of Dr. Case, was conflicting, and the result reached by the jury upon such evidence can not be disturbed by us.

It is claimed that the evidence does not sufficiently show that the escape of fire from the appellant's locomotive was the

proximate cause of the burning of the appellee's property. Counsel on both sides have inadvertently failed to indicate the portions of the voluminous record illustrating this question. The appellee's barn was about 176 rods distant from the Case barn, and about 400 feet west of a line extended north from the Case barn. A number of witnesses testified that a wind was blowing steadily and constantly from the south, and that it was a moderately strong wind, but not extraordinary for the season, and that the weather was clear, and the sun was shining. One witness said he would call it a south wind. Another witness, who saw both barns burning at the same time, testified that the wind was blowing northward. Immediately before she saw the fire in appellee's barn, she saw fires at different places in the fields, and in a fence between the two barns; the one of these fires nearest the appellee's barn being somewhat less than a quarter of a mile distant therefrom, in a fence which extended east and west; this fire being three or four rods east of a road, which, running north and south, passed near appellee's barn. She testified that before she saw the fire in the appellee's barn, she saw small pieces of shingles burning at a brisk rate on the appellee's premises in the barn-yard, which had been blown by the wind from the Case barn, though she did not see them alight. Another witness testified that while the Case barn was burning, she saw fire in "the timothy" about half way between the Case barn and appellee's barn; that there were fires in all the territory between the two barns, three or four separate fires between them, and a fence between the two barns was burning. These fires, she stated, were southeastward from appellee's barn. She said that the wind "was blowing almost parallel with the two barns; it scattered fire between the two barns;" that when she first saw the fire at the Case barn there was no fire at appellee's barn, and there was then no fire that she knew of between the two barns, and she saw no persons between them; that the wind was blowing "from the south, or probably southeast of south,"—a mod-

erate wind for that time of year; that she saw one of the fires between the barns before she saw that at the appellee's premises, and others of them at about the same time that she saw that at the appellee's premises.

There was evidence upon which the jury could have found that the fire, negligently started in the Case premises, passed, directly or indirectly, as stated in one of the special findings, and as a natural consequence, without the intervention of any independent and responsible human cause, to appellee's property, as an ordinarily prudent person would have regarded as reasonably possible under the state of the wind and weather existing at the time, and, therefore, that the appellant's negligence was the proximate cause of appellee's loss. *Milwaukee, etc., R. Co.* v. *Kellogg*, 94 U. S. 469; *Small* v. *Chicago, etc., R. Co.*, 55 Iowa 582, 8 N. W. 437; *Adams* v. *Young*, 44 Ohio St. 80, 4 N. E. 599; *Hart* v. *Western R. Corp.*, 13 Metc. (54 Mass.) 99; *Green Ridge R. Co.* v. *Brinkman*, 64 Md. 52, 20 Atl. 1024; *Kelsey* v. *Chicago, etc., R. Co.*, 1 S. Dak. 80, 45 N. W. 204; *Yanktown Ins. Co.* v. *Fremont, etc., R. Co.*, 7 S. Dak. 428, 64 N. W. 514; *Kuhn* v. *Jewett*, 32 N. J. Eq. 647; *Frace* v. *New York, etc., R. Co.*, 143 N. Y. 182, 38 N. E. 102; *Billman* v. *Indianapolis, etc., R. Co.*, 76 Ind. 166; *Louisville, etc., R. Co.* v. *Krinning*, 87 Ind. 351; *Louisville, etc., R. Co.* v. *Nitsche*, 126 Ind. 229, 9 L. R. A. 750; *Chicago, etc., R. Co.* v. *Williams*, 131 Ind. 30; *Chicago, etc., R. Co.* v. *Burden*, 14 Ind. App. 512; Shearm. & Redf. Neg., section 666 *et seq.*

Counsel for appellant have discussed at considerable length the instructions given to the jury. We have carefully examined and compared the instructions, having regard to the appellant's criticisms. While upon some points additional instructions would not have been improper if requested, we think that in the charge to the jury, taken as a whole, there was no reversible error. To notice and discuss all the criticisms of counsel would require considerable space, without apparent usefulness. The judgment is affirmed.