FIFER *v.* RITTER ET AL.

[No. 19,836.   Filed June 5, 1902.]

APPEAL.—*Highways.*—*Motion to Reject Report of Viewers.*—*Record.*—A motion to reject the report of viewers, on the trial of a remonstrance for damages in a proceeding for the opening of a highway, can not be reviewed on appeal where it was not brought into the record by bill of exceptions or otherwise. *p. 10.*

SAME.—*Highways.*—*Motions in Commissioners' Court.*—A motion made in highway proceedings before the board of county commissioners, which was not renewed on appeal to the circuit court, can not be reviewed on appeal to the Supreme Court. *p. 10.*

TRIAL.—*Opening Issues.*—*Discretion of Court.*—It is within the discretion of the trial court to refuse to open the issues and permit the filing of a motion after one trial of the cause has been had, and after the cause has been venued to another county and a large amount of costs had accumulated. *p. 10.*

SAME.—*Instructions.*—*Credibility of Witnesses.*—*Weight of Evidence.*—In instructing the jury that they are the exclusive judges of the credibility of witnesses and the weight of the evidence, it is proper for the court to tell the jury that they "must" take into consideration the interest, the appearance on the witness-stand, the intelligence, and the opportunities for learning the truth of matters testified about. *p. 11.*

Fifer *v.* Ritter.

HIGHWAYS.—*Opening.—Damages.— Additional Fences.—*When property is taken for the location of a public highway, the owner is entitled to just compensation, including pay for inconveniences imposed, and for additional fences, but such compensation need not be in money or property, but may be in benefits conferred. *p. 12.*

SAME.—*Opening . Highway.—Damages.—Instruction.—*On the trial of a remonstrance for damages in a proceeding for the opening of a highway, an instruction that it was proper to consider as a benefit any increase to the value of plaintiff's land although like benefits accrued to all other lands affected in the community, and if the benefits resulting from the highway were all bestowed upon lands in the neighborhood other than plaintiff's and did not make the plaintiff's land more valuable, they would have no right to consider them, though open to criticism for looseness of language, did not tend to mislead the jury into thinking that it was proper to charge plaintiff any benefit that did not attach to his land. *p. 13.*

SAME.—*Opening Highway.—Damages.—Instruction.—*On the trial of a remonstrance for damages in a proceeding for opening a highway, an instruction that "If you find in the process of time that the proposed road will reasonably bring added benefits to this land, you may consider how much at this time the benefit would be to this land by establishing this road" is not erroneous as authorizing the jury to charge against plaintiff any future benefits that may come to the land by reason of the improvement. *pp. 13, 14.*

SAME. — *Location. — Damages. — Evidence.—*Where a landowner seeks damages for the location of a highway so located as to cut off a strip of his land, evidence that the value of such strip consisted solely in the timber which grew upon it is admissible. *p. 14.*

From Fulton Circuit Court; *A. C. Capron,* Judge.

Proceedings by Daniel W. Ritter and others to open highway, wherein William Fifer files remonstrance for damages. From a judgment for petitioners, remonstrant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*W. B. Hess, G. W. Holman* and *R. C. Stephenson,* for appellant.
*S. Parker* and *H. A. Logan,* for appellees.

HADLEY, J.—Appellees filed before the board of commissioners of Marshall county their petition for a public highway, and afterwards, upon a favorable report of the view-

ers, appellant filed his remonstrance for damages.   The reviewers awarded him a small amount, from which award he appealed to the circuit court, where the verdict of the jury was against him.   A new trial was granted him, whereupon the venue was changed to the Fulton Circuit Court.   In the latter court the jury also returned a verdict adverse to appellant.

Some attempt has been made to bring before us the sufficiency of the report of the first viewers, by invoking consideration of appellant's motion to reject the same filed before the commissioners upon the presentation of said report. The question, however, can not be considered for two reasons:   (1) Because the motion to reject is not brought into the record by bill of exceptions, or otherwise; and (2) because, on appeal to the circuit court, the motion was not renewed or presented.   It has been decided by this court very many times that such cases on appeal to the circuit court are triable *de novo;* and while, on appeal, no question can be considered that was not presented to the commissioners,—those questions that were so presented must be brought forward and properly presented in the circuit court, the same as if they had not been raised below. *Trittipo* v. *Beaver,* 155 Ind. 652, and cases collated.

The record does disclose that after the first trial in the circuit court, and after the case had gone into another county for trial and a large amount of costs had accumulated, appellant requested leave of the court to refile his motion to reject the viewers' report presented to the commissioners.   The court refused to open the issues and permit the motion to be filed, which action was but the exercise of a reasonable discretion, and is not reviewable.

This appeal is from the judgment of the circuit court, and, under the state of the record, the judgment comes here upon the assumption that all the proceedings in the case up to and including the appointment of reviewers to assess appellant's damages were valid.   This narrows the appeal

to the single assignment which calls in question the action of the court in overruling the motion for a new trial.

Complaint is made of certain instructions given to the jury. Number two informed the jury that they were the exclusive judges of the credibility of the witnesses and of the weight of their testimony, and that in determining these things they must take into consideration the interest, the appearance upon the witness stand, the intelligence, the opportunities for learning the truth concerning the things testified about, the apparent candor and correctness of the statements as compared with the usual and ordinary nature of things. The particular assault upon the instruction is directed against the word *must,* as being an encroachment upon the absolute and exclusive right of the jury. We can not adopt this view. *Must* is here employed in the sense of duty, and the term is equivalent to telling the jury that it was their duty to consider the matters enumerated in estimating the credibility and weight of the testimony. And it clearly was their duty. It was unquestionably their duty to decide the case according to the weight,—that is according to the convincing force, of the evidence, honestly arrived at, and just as plainly their duty to test the value of the testimony of each witness by such tests as common experience has proved to be reliable. Will any one say that a juror may discharge his duty by closing his eyes to the manner, conduct, and appearance of witnesses while delivering their testimony, and giving to the naked words of each witness full and equal probative force? The competency of evidence is one thing, and its weight another. Competency is purely a question of law for the court to declare. Its weight is a question for the jury to determine. So when a judge tells the jury that it is *proper* for them to consider the interest, manner, etc., of the witnesses, as it is usually phrased, he is but ruling as he may rightly rule that such evidence is competent; and, in searching for the fact established by the evidence, it is the duty of the

jury to consider all competent evidence that may throw light upon the truth, and it is no less essential to a correct result, and quite as much the jury's duty to consider facts and circumstances properly before them, which go to discredit a witness or to strengthen his testimony, as it is to consider the statements made by the witnesses. The cases of *Woollen* v. *Whitacre*, 91 Ind. 502, *Unruh* v. *State, ex rel.*, 105 Ind. 117, *Duvall* v. *Kenton*, 127 Ind. 178, and perhaps some others, so far as they may seem to hold to a different rule, are no longer authorities upon the question here involved. That which seems the more reasonable view expressed above, and which follows *Deal* v. *State*, 140 Ind. 354, 366, *Newport* v. *State*, 140 Ind. 299, 302, *Smith* v. *State*, 142 Ind. 288, and *Keesier* v. *State*, 154 Ind. 242, may now be said to be the approved rule.

The objections to the third, fourth, and eighth instructions are not urged.

By number five, the court, in substance, instructed the jury that when one's property is taken for the location of a public highway, the owner is entitled to a just compensation for what is taken, including compensation for inconveniences imposed, and for such additional fences as may reasonably be required by the opening of the highway. But it is not essential that the compensation rendered shall be in money or other property. Benefits accruing to the land upon which the highway is laid by reason of its establishment thereon, if any, are to be reckoned as compensation, and if such benefits equal the amount of damages then there can be no recovery. This was proper. See *Gas Light, etc., Co.* v. *City of New Albany*, 158 Ind. 268.

As to the sixth instruction, appellant complains of the following language: "If the new fences add to the value of the farm as much as it was worth to build them, then the plaintiff is not entitled to anything on this account." We see nothing improper in this.

Fifer *v.* Ritter.

About two acres constituting a fringe along the margin of the river was cut off by the highway from the main farm, and further complaint is made of the sixth instruction because the court told the jury that if they found that the part cut off was rendered useless to the plaintiff, then he was entitled to recover on that account whatever the usable value of the fringe might be. The court made his meaning full and clear and favorable to the plaintiff by adding "he still owns the title, but whatever value has been taken from him,—that is, taken from his farm by this cutting off,—that he is entitled to recover."

The most earnest contention is over the seventh. After indicating the course to be pursued in summing up the plaintiff's damages, the court proceeds to say, in substance, that the benefits proper to be considered are such as attach to the land of the plaintiff, without reference to his peculiar wishes or ideas; that it was proper to consider as benefit any increase to the value of the plaintiff's land, although like benefits accrued to all other lands affected in the community; and "if you find in the process of time that the proposed road will reasonably bring added benefits to this land, you may consider how much *at this time* the benefit would be to this land by establishing this road." The court restricts chargeable benefits to those special benefits received by appellant's lands by saying, if the benefits resulting from the highway were all bestowed upon lands in the neighborhood other than the plaintiff's, and did not make the plaintiff's land more valuable, "you have no right to consider them." This instruction is open to just criticism for looseness of language, which doubtless resulted from the court addressing the jury extemporaneously, and having his words taken in shorthand,—a practice not to be commended; but, taking the charge as a whole, we do not think the jury could have been misled thereby into understanding that it was proper to charge appellant with any benefit that did not attach to his land. It can not be said that

benefits bestowed upon his land would be affected by the fact that others received like' benefits from the construction of the road.

The quoted part of this charge is attacked upon the ground that it authorized the jury to charge against the plaintiff any future benefits that may come to the land by reason of the improvement. The charge does not warrant this construction. The language is that if the jury find that in the process of time the road will reasonably bring increased benefits to the land they might consider how much *at this time* the benefit will be from establishing the road. This should not be said to mean that the jury might presently consider and charge against the plaintiff whatever benefits might be reasonably expected in the future to flow to the land from the highway, but its simple import is that the jury might consider what the opportunity which the construction of the road brought to the land for future growth and enhancement in value was worth to it. This was not erroneous.

Complaint is also made of the refusal of the court to give the jury certain instructions asked by appellant. We have carefully examined and compared each one of them with the instructions given, and find that, in so far as they correctly express 'the law, the substance was fully embraced by those submitted to the jury.

Certain testimony concerning the value of that part cut off next to the river, and the probable duration of an old fence, was admitted over appellant's objection. If the value of the land consisted solely of the timber that grew upon it as indicated by the answers, this was a fact proper to be shown as affecting the question of damages by having it isolated by the road from the main farm.

We find no error in the record. Judgment affirmed.