TOLEDO, ST. LOUIS & WESTERN RAILROAD COMPANY v. FENSTERMAKER.

[No. 20,413. Filed November 29, 1904.]

RAILROADS.—*Setting Fires.*—*Circumstantial Evidence.*—Where, in an action against a railway company for damages for negligently setting fires, it is shown by the evidence of the plaintiff that within five minutes after the passing of a freight-train at one time and a passenger-train at another, fires started near the track on the side to which the wind was blowing; that there was no fire before the passage of such trains at such places, and had not been for an indefinite period; that no one saw the fire escape from the trains, and it was shown by such company, in its evidence, that all of its locomotives were equipped with the best and most approved spark-arresters, and that they were in good condition at the time of such fires, an answer by the jury to an interrogatory that such fires were set by such trains is fully warranted. *p. 537.*

SAME.—*Negligence.*—*Circumstantial Evidence.*—Where, in an action against a railway company for damages for negligently setting fires, it is shown by the plaintiff by circumstantial evidence that the trains of such company set the fires complained of, and such company shows by its evidence that the spark arresters on such engines were "good as new" and of the latest and most approved pattern, and it further shows by testimony of its experts that engines so equipped could not emit sparks to such a distance as shown where fires started, an answer of the jury to an interrogatory that the spark-arresters on such engines were not in good condition at the time of the fires is fully justified by the evidence. *p. 538.*

EVIDENCE.—*Injury to Freehold.*—*Value.*—Where the complaint charged that plaintiff was the owner of certain real estate; that on said real estate was a clover field and much valuable timber; that these were burnt and destroyed by defendant's negligently setting fires thereon, it is proper to ask witnesses the value of such land before and after such fires, since the damage charged was the injury to the freehold. *p. 539.*

TRIAL.—*Instructions.*—An instruction that the jury should take into consideration the opportunities of the several witnesses for knowledge,

their conduct, demeanor, interest in the result of the suit, the proba-
bility of their statements in view of all the circumstances, and from all
these determine upon which side is the weight of the evidence, is proper
and a correct statement of the law.  *p. 540.*

TRIAL.—*Inference from Flying Sparks.*—Where an instruction directs the
jury that if they find that sparks escaped from the engine and blew
seventy or eighty feet, they might consider that fact in determining
whether the spark-arresters were in proper condition, even if improper
under the evidence in the case, is not reversible error.  *pp. 540, 541.*

SAME.—*Instruction Not Applicable.—Waiver.*—Where the court gives an in-
struction not applicable to the evidence, such error is not available to
the appellant where the court upon appellant's motion gives one sub-
stantially the same.  *p. 541.*

SAME.—*Proving "Allegations" of Complaint.*—Where the court instructs
that the burden is upon plaintiff to prove all the allegations of his
complaint, and if he fails to prove every allegation by a preponderance,
their verdict should be for defendant as to such "allegation," did not
mislead the jury when in other instructions they were correctly told
that a failure of the plaintiff to prove every material allegation in his
complaint would be fatal to his recovery.  *p. 541.*

From Grant Superior Court; *B. F. Harness,* Judge.

Action by George Fenstermaker against the Toledo,
St. Louis & Western Railroad Company for damages
for negligently setting fires on his lands.   From a judg-
ment for the plaintiff on a verdict for $672, the defend-
ant appeals.   Transferred from the Appellate Court un-
der §1337u Burns 1901.   *Affirmed.*

*C. G. Guenther, Braden Clark, Clarence Brown* and *C.
A. Schmettau,* for appellant.

*J. A. Kersey,* for appellee.

HADLEY, J.—Suit and recovery by appellee for fire dam-
ages.   There were two fires—one on October 8, 1901, and
one on April 22, 1902.   There are two paragraphs of com-
plaint—one based on the October and the other on the
April fire—and each is predicated on the alleged negli-
gence of appellant in using on its locomotive a defective
and insufficient spark-arresting device.

The only assignment is the overruling of appellant's
motion for a new trial.   The grounds of the motion are

the insufficiency of the evidence, the admission of improper evidence, and the giving and refusing of certain instructions.

It was in proof that the plaintiff's property was destroyed by fire as follows: His meadow on October 8 and his wood and timber lot, known as the "sugar-camp," on April 22—both of these lots lying north and adjoining appellant's right of way, which at that place runs east and west. On October 8, about noon, in a very dry time, and within five minutes after a freight-train went west on appellant's railroad, a fire was discovered in the dry grass of the meadow, beginning about two feet north of the right of way. There was at the time a brisk wind blowing towards the northwest, and the fire developed and spread so rapidly that it had burned over two-thirds of the field and consumed twenty rods of rail fence before it could be brought under control. On April 22, about 1 p. m., in an equally dry time, and within five minutes after a passenger-train went west, a fire broke out in the southwest corner of appellee's sugar-camp. There was a strong wind blowing from the southwest to the northeast. The surface of the sugar-camp was covered with dry grass, weeds, leaves, and brush. The fire went rapidly and violently ahead of the wind, mounting into the tops of some of the trees, and reached and consumed a log dwelling-house and all its contents, and destroyed about all the trees in the lot. Before the passage of the trains there was no fire at either place, nor in the vicinity, and had not been for an indefinite period, except that in a field of another owner, on the south side of the railroad, the northeast corner of which, but for the right of way, would have cornered with the southwest corner of appellee's sugar-camp, a plowman a few minutes before the passage of the train and the origin of the fire, at a point somewhere about twenty rods west of the sugar-camp corner, had fired and burned two piles of cornstalks that had been

bunched in harrowing down the stalks. There was positive testimony of two witnesses that no fire escaped from the burning stalks. There was no direct proof in either instance that fire escaped from the passing locomotives and ignited the grass on appellee's land. Aside from the locomotives, the evidence discloses no known actual or probable cause of either one of the fires. On the other hand, appellant produced testimony that all its locomotives were equipped with a device that was in common use on the railroads in the country, and which was the best and most approved device known for arresting sparks, and which was in good condition on each of the locomotives at the time of the fires.

Appellant's counsel argue that to recover appellee must prove (1) that the fire which ignited the grass on appellee's premises came from the locomotives; and (2) that it escaped because of the defective or insufficient condition of the spark-arresters.

1. With respect to the first proposition it is contended by appellant that there was no evidence that the grass at either time was ignited by sparks from the locomotives. Courts have seldom gone so far as to hold it essential for a plaintiff to prove by direct and positive evidence that the fire complained of escaped from a locomotive. Such fires usually occur in broad daylight, when flying sparks are not plainly visible, and in many cases it would be manifestly unfair and unreasonable to give judgment against a plaintiff because he failed to produce a witness who saw the fire escape from the locomotive and fall upon the combustible matter. This and the other courts of the country generally have recognized the more just rule that where it is shown that there was no fire on the premises before, and no probable cause for the fire except the locomotive; that the wind was blowing from the road to the grass; and that the fire broke out soon after the engine passed—these things are circumstances sufficient to justify the conclusion that the

fire was communicated by the train. *Pittsburgh, etc., R. Co.* v. *Indiana Horseshoe Co.* (1899), 154 Ind. 322, and cases collected on page 333. Under the rule the evidence fully warrants the finding that the fires complained of were set by appellant's passing trains.

But, second, is it sufficiently shown that the fire escaped from appellant's engine through the company's negligence? The law recognizes the right of a railroad company to employ fire for the production of steam in the operation of its road, and, while the company is required to observe a high degree of care to prevent the escape of fire, yet when it has adopted and maintains, in good repair and condition, the device generally recognized and used by railroads as the best and most approved for the suppression of fire, it has done all the law requires of it; and if the engine equipped with such device is properly handled, and fire escapes notwithstanding such precautions, it must be regarded as an accident for which the railroad company is not liable. In the case at bar the complaint charges that the fires resulted from the negligence of appellant in using insufficient spark-arresters. The burden is upon the plaintiff to prove the negligence charged. *Pittsburgh, etc., R. Co.* v. *Hixon* (1886), 110 Ind. 225; *Chicago, etc., R. Co.* v. *Ostrander* (1888), 116 Ind. 259, 263.

But like the escape of fire, negligence may be established by circumstantial as well as by direct evidence, or by both. On behalf of the defendant there was testimony by two employes to the effect that they inspected the locomotives said to have communicated the fires on the morning of the fires, before going out, and also upon the following morning, and at all times found the spark-arrester in each in good condition—"good as new," said one witness. The testimony of these two witnesses was given eighteen months after the alleged inspections. Two railroad officials, introduced by appellant as expert witnesses, testified that a locomotive properly equipped with such a spark-arrester

as had been shown to be on the engines in controversy, in good condition, and properly operated, will not throw out sparks that could be carried through the atmosphere sixty-four feet and ignite combustible substances. A third, in answer to the same question, answered that he did not know.

There was other testimony relating to the same subjects, and from all of it the jury found as a fact, in answer to an interrogatory propounded to them by the court, "that the spark-arrester in the engine that started the fire on October 8 and April 22 was not in good repair at the time of the fire." If it was a fact that the spark-arresting device, when in good condition and properly operated, would prevent the escape of fire in such quantity as could be borne sixty-four feet and set fire to the grass—and it was shown that fire did escape and ignite the grass that distance from the road—the escape of the fire would be very powerful evidence that the device was in bad or in insufficient condition. At all events we think it sufficient to justify the jury in finding the negligence alleged in the complaint established.

2. Appellee alleges in one paragraph of the complaint that he is the owner of certain specifically described real estate; that appellant's railroad traverses it; that on October 8 there was on said tract a clover field of the value of $100, and a fence of the value of $50, which on said day were destroyed by fire through the negligence of appellant, and the destruction of said property was to the appellee's damage of $150. In another paragraph containing the same general averments it was added that on April 22 there were growing on the described premises 1,000 sugar, oak, beech, and other trees of the value of $1,000, which were destroyed, etc., and by the destruction of which the plaintiff was damaged $1,000, for which he asks judgment.

On the subject of damages the court permitted a witness, over the objection of appellant, to answer the follow-

Toledo, etc., R. Co. *v.* Fenstermaker.

ing question: "State what that farm was worth immediately before that fire?" The witness answered that the farm was worth $80 or $90 per acre before the fire, and immediately after the fire $1,000 less. The ground of objection was that the damages claimed is to the sugar-camp, and that no such special damages are alleged to have accrued from a destruction of the trees as will enable appellee to prove damages to the farm generally. We do not see the force of appellant's objection. It was perfectly proper to allege and prove the elements of damage to the farm, as a farm; that it had growing on it, as a source of wood and timber supply to the farm, wood and timber trees which were destroyed. The fact that the value of the timber was alleged did not change the character of the proof, nor make the averment a claim for damages to the wood and timber lot as distinguished from the whole tract as a farm. There was no effort to prove the value of the timber. The destruction of the growing trees and clover was an injury to the freehold, and there was no error in allowing the witness to answer the question

3. Appellant complains of the giving of instructions numbered 1, 2, 3, 9, 10, 14, 17, and 18. By number one the court directs the jury that it should take into consideration the opportunities of the several witnesses for knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any shown, in the result of the suit, the probability or improbability of their several statements, in view of all the other evidence, facts, and circumstances proved on the trial, and from all these circumstances determine upon, which side of the case is the weight or preponderance of the evidence. Number two and number three were to the same effect, and all fully sustained by *Fifer* v. *Ritter* (1902), 159 Ind. 8, and *Strebin* v. *Lavengood* (1904), *ante,* 478.

Number nine is to the effect that if it is found that the

fires were set by means of sparks which escaped from the engines, and were blown a distance of sixty to seventy feet into the clover and grove of the plaintiff, such fact might be properly considered in determining whether the spark-arresters were in proper condition. Even if improper, under the state of the evidence, the giving of this instruction does not constitute reversible error.

Number ten is objected to because not pertinent to the evidence. There was evidence introduced to which the instruction would have been applicable, but for some reason it was subsequently withdrawn. If it was error to give this instruction, the error is not available to appellant, because the court repeated the same charge in substance in number eight given as requested by appellant.

We have carefully examined numbers fourteen, seventeen, and eighteen, and compared them with the whole body of the instructions, and we find that each correctly stated the principle involved, and, taken as a whole, the instructions were quite as favorable to appellant as it had the right to ask.

The court refused to give instructions numbered one and four requested by the defendant. The first directed the jury to return its verdict for the defendant. This was correctly refused. The fourth was in these words: "You are instructed that the burden of proof is upon the plaintiff to prove all the material allegations of one or more paragraphs of his complaint by a fair preponderance of the evidence. In this case, if the evidence is evenly balanced or preponderates in favor of the defendant on any material allegation, then your verdict should be for the defendant as to that paragraph of the complaint containing an allegation in support of which the evidence is evenly balanced, or on which the preponderance is in favor of the defendant." This the court modified and gave as follows: "You are instructed that the burden of proof is upon the plaintiff to prove all the material allegations of one or more

paragraphs of his complaint by a fair preponderance of the evidence. In this case, if the evidence is evenly balanced or preponderates in favor of the defendant on any material allegation, then your verdict should be for the defendant as to such allegation." In the fourth instruction given as requested by the plaintiff, the court had previously directed the jury that the plaintiff, in order to recover on any paragraph of his complaint, must prove all the material averments of such paragraph by a preponderance of the evidence. In the first clause of the instruction as modified, the court restated the same thing, and the language in the latter clause to the effect that, if the evidence was evenly balanced or preponderates in favor of the defendant on any material allegation, their verdict should be for the defendant as to such allegation, could not have misled them. Under the clear and repeated statements of the court, the jury could not have misunderstood that a finding for the defendant on a material allegation was equivalent to a finding for it on the paragraph of complaint embracing such allegation.

We find no error. Judgment affirmed.