## REPUBLIC IRON AND STEEL COMPANY v. LULU.

[No. 6,683.   Filed November 16, 1910.   Rehearing denied June 29, 1911.]

1. MASTER AND SERVANT.—*Removing Slag.—Explosions.—Failure to Warn.—Proximate Cause.—Complaint.*—A complaint alleging that defendant operated a foundry, that the plaintiff was employed to remove slag, that he knew nothing of the dangers of an explosion thereof by the contact of water therewith, that defendant knew thereof but failed to warn him, that defendant negligently left pools of water near such slag, and that the plaintiff, while performing his work, stepped therein, splashing water upon the slag and causing an explosion, to his injury, sufficiently shows defendant was negligent, that its negligence was the proximate cause of the injury, and that the accident was one that the defendant should have anticipated.  pp. 275, 278.

2. MASTER AND SERVANT.—*Latent Dangers.—Duty to Warn.*—It is the master's duty to warn servants of the latent dangers of their service.  pp. 276, 277.

3. NEGLIGENCE.—*Proximate Cause.*—The proximate cause of an injury is the decisive cause; and it may consist in omission as well as commission.  p. 277.

4. PLEADING.—*Complaint.—Construction.*—A complaint should be liberally construed with a view of giving substantial justice to the parties.  p. 277.

5. TRIAL.—*Interrogatories.*— *Contradictory Answers.*— Conflicting answers to interrogatories to the jury nullify one another. p. 279.

6. APPEAL.—*Instructions.*—*Bills of Exceptions.*—Instructions may be brought into the record by a special bill of exceptions. p. 279.

7. MASTER AND SERVANT.—*Latent Dangers.*—*Failure to Warn.*—*Instructions.*—An instruction that it is the duty of a master to warn his servant who is ignorant of a danger, known to the master, is not misleading on the ground that it required the master to warn the servant against obvious dangers, where the complaint and the evidence showed that the servant was injured by splashing water upon hot slag, thereby causing an explosion. p. 279.

8. MASTER AND SERVANT.—*Latent Dangers.*—*Duty to Warn.*—*Instructions.*—In an action by a servant against defendant iron company for negligence in failing to warn him of the dangers of the contact of water with hot slag, an instruction that the duty of the master to instruct an ignorant servant of latent dangers is commensurate with the danger to be apprehended, is not prejudicial. p. 280.

9. MASTER AND SERVANT.—*Latent Dangers.*—*Implied Notice.*—*Instructions.*—*"Must."*—*"May."*—In an action by a servant against defendant iron company for failing to inform him of the latent danger of the contact of water with hot slag, the refusal of an instruction, that if the jury should find that the plaintiff worked in close proximity to such slag prior to his injury and that it was common knowledge among the employes that the contact of water with hot slag would cause an explosion, the jury must consider such evidence on the question of such servant's notice of such danger, is not erroneous, since said instruction confines the jury to the bare facts stated therein. Roby, J., concurs. p. 280.

10. TRIAL.—*Instructions.*—*Duplication.*—It is not erroneous to refuse to duplicate instructions. p. 282.

From Lake Superior Court; *Harry B. Tuthill*, Judge.

Action by Stani Lulu against the Republic Iron and Steel Company. From a judgment on a verdict for the plaintiff for $3,000, defendant appeals. *Affirmed.*

*Crumpacker & Moran, Richard Jones, Jr.,* and *Fred Crumpacker*, for appellant.

*F. N. Gavit, J. W. McAleer* and *J. E. Westfall*, for appellee.

RABB, J.—Appellant is engaged in the manufacture of iron and steel products, and for this purpose maintains a large rolling-mill and iron furnace. In the process of manufacturing these products, the raw material is melted in the furnaces to a liquid form, and foreign substances, which are known as slag, are separated from the pure iron, and while in a molten state are drawn from the furnace into a pot, known as a cinder pot.

Appellant's cinder pot was sunk in the ground until the top of the pot was on a level with the surface of the ground, and was located outside the walls of appellant's building enclosing its furnace, so that it was exposed to the weather.

The slag, after it is cool enough to handle, is removed from the cinder pot to the dump pile, and, for convenience in handling it, while it is still in a liquid state an iron link is suspended in the molten mass, from a bar placed across the top of the pot. Around this link the slag gathers and hardens as it cools. It appears that while the slag is in a molten state its contact with water is harmless, but there is a certain stage in the process of its cooling when contact with water will cause a dangerous explosion.

Appellee was engaged in appellant's service in charge of the cinder pot, and while engaged in the duties of his service was severely injured by the explosion of the slag, caused by his stepping into a pool of water near the cinder pot, which had gathered there from a recent rain, and which caused the water to splash into the cinder pot onto the hot slag.

This action was brought by appellee to recover damages for the injuries thus sustained. He claims that said injuries resulted from negligence on the part of appellant in failing to warn him of the danger. The case was put at issue and a trial had, resulting in a verdict in favor of appellee.

In this court the sufficiency of the complaint is assailed, as is also the ruling of the court below on appellant's motion.

for judgment in its favor on the answers returned by the jury to interrogatories submitted to it, and on its motion for a new trial.

The complaint set forth facts showing the nature of appellant's business and of appellee's employment, the nature of the material appellee was required to work with, in reference to its explosive character, and showing that the iron vessel, in which the slag was run from the furnace, was located as heretofore stated, and that it was sunk in the earth until its top was on a level with the surface of the ground.

It was further alleged that the ground around the vessel was packed and hardened, and of an uneven surface, so that when it rained water would stand in pools in such uneven places for a day at a time, after the rain was over. All such conditions, it is charged, were known to appellant. The complaint narrates the circumstances attending the accident that resulted in appellee's injury, and expressly alleges that appellee was ignorant of the fact that the slag was liable to explode on coming in contact with water, and alleges, also, that appellant knew of this quality in the slag and of the danger arising therefrom, and negligently set appellee to do the work in which he was engaged, knowing him to be ignorant of the explosive character of the slag on its coming in contact with water, without informing him of such explosive character, or warning him of the danger, and that appellee stepped into the water, by reason of the negligence of appellant in so failing to instruct or warn him, and "that his injuries were caused by the negligence before alleged."

It is insisted that the complaint is insufficient to withstand a demurrer (1) because it fails to show that the injury complained of did not result from an assumed risk of the employment; (2) because it fails to show that the injury was proximately caused by the negligence averred; (3) because it affirmatively appears that the injury was the result of an accident, not reasonably to have been anticipated as a re-

sult of the negligence charged, and therefore created no lia-
bility against appellant.

In support of its first contention, appellant maintains that
the danger of injury from the explosive character of the
slag was an ordinary risk of appellee's employment,
1. which he assumed when he accepted the employment.

It is argued that a liability to explode was inherent
in the thing appellee's employment required him to work
with and around, and we are cited to the case of *Myers* v.
*W. C. DePauw Co.* (1894), 138 Ind. 590, as decisive authori-
ty for this contention.

The case cited involved an injury to an employe in a plate
glass factory, whose duties required him to handle plate
glass, and whose hand was cut by the breaking of glass. It
was there held that the master was under no duty to inform
the servant, who entered its service, of the danger arising
from the liability of the glass to break. The court, in de-
ciding the case, said: "It is a matter of common observation
that glass is a fragile substance, and that its broken edges
are sharp and dangerous. It is necessarily one of the natural
incidents of the handling of glass, in the processes of its
manufacture, that it will be broken without violence from,
or the fault of, those who so handle it." It is for this reason
that the court held in that case that no duty to instruct or
warn the employe rested on the master. The servant could,
by looking at the glass, see the danger. It was a matter of
common knowledge. Such, however, is not the character of
the substance with which appellee in this case was required
to deal. The court cannot say that the slag or cinders were
inherently explosive, nor is it a matter of common knowledge
that hot slag will explode, or that it will explode when
brought in contact with water, and it could not be told by
looking at the substance that it possessed this quality. In
fact, it appears that it is not explosive when brought into
contact with water, except under certain conditions; but
when these conditions exist—that is, when is has sufficiently

cooled so as to become hardened on the surface—then if it comes in contact with water a dangerous explosion is inevitable. If this peculiar quality of the slag is known, danger to those who handle it, arising from this cause, can easily be avoided. In fact, if proper care is used, the danger may be eliminated, but if it is not known, and conditions are such that water may be brought in contact with the slag when it is in that peculiar state that contact will cause an explosion, danger is ever present while the conditions exist, and is present only because of the ignorance of those whose movements around the water and the hot slag when they are in such proximity may bring the hot slag and water in contact with each other. The position of the man who is ignorant of the explosive character of the slag, and who works around it under such conditions, is somewhat similar to that of a soldier, who, charging an enemy's fort, treads over ground underlaid with torpedoes, or a ship sailing over a harbor that has been mined.

The averments of the complaint are that appellant set appellee to work with this slag pot, with the hot slag in it; that in the course of appellee's work with and around it, the slag necessarily came into that state when it would explode if brought in contact with water; that the top of the pot was level with the surface of the ground, and the ground around it was filled with pools of water; that appellee was ignorant of the danger resulting from the contact of the water and the slag; that appellant knew the conditions, knew the explosive quality of the slag, and knew that appellee was ignorant that it possessed this quality.

The law requires of the master, at the inception of the relation, or when the work is assigned to an inexperienced servant, that he inform such servant not only of extraordinary dangers, but of the ordinary dangers that are likely to arise in the work, and which the servant cannot see and understand without such information. 2 Bailey, Per. Inj. §2665; Buswell, Per. Inj. §202; Wharton,

Negligence, §208; Wood, Master and Serv. (2d ed.) §349; 1 Labatt, Master and Serv. §240, and cases cited; *St. Louis, etc., R. Co.* v. *Valirius* (1877), 56 Ind. 511; *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141; *Smith* v. *Peninsular Car Works* (1886), 60 Mich. 501, 27 N. W. 662, 1 Am. St. 542; *Parkhurst* v. *Johnson* (1883), 50 Mich. 70, 15 N. W. 107, 45 Am. St. 28.

The conditions shown by the facts averred in the complaint clearly imposed the duty upon the master to put his ignorant servant upon the same footing with himself with reference to knowledge of the danger; to arm him with the knowledge necessary to enable him to protect himself from the danger. Do the facts averred show the injury complained of was the proximate cause of the negligence charged? The proximate cause of a given result may not be the immediate cause. Proximate cause, within the meaning of the expression when used in a legal sense, is the efficient cause; the cause that starts the train of circumstances that leads to the injury. In legal contemplation, that may be a cause of a particular occurrence which fails to prevent it, as well as acts and circumstances that actively work to produce it.

It was the duty of the master to inform the servant of those qualities in the material with which he was required to work, that it was necessary he should know in order to protect himself from danger while engaged in the work. It was his duty to prevent the explosion of the slag, by imparting his knowledge of its character to the servant.

It is averred that appellee stepped into said water, by reason of the negligence of appellant in so failing to instruct or warn him. This averment must be construed in connection with all the other averments of the complaint, which must be liberally construed with a view to substantial justice between the parties. §385 Burns 1908, §376 R. S. 1881.

What was meant by this averment? How must it have

been understood by appellant? The negligence charged against appellant is that it failed to inform appellee

1. of the explosive nature of the slag. The words "instruct" and "inform" convey the same meaning to the mind in the connection in which they are used in the pleading, and treating them as synonymous, we think that the complaint fairly charges that because appellee did not know that the hot slag was liable to explode if brought in contact with water, he stepped into the pool of water, and caused it to splash into the cinder pot. We think it sufficiently appears that the negligence charged was the proximate cause of the injury, and that it was not essential that the complaint should aver that if appellant had warned appellee of the explosive character of the slag, he would not have stepped into the water. When it is said that appellee stepped into the water because he lacked this information, the force of the statement is not added to by the further averment that he would not have done it had he possessed the information which appellant's negligence withheld from him. He stepped into the water because he did not know the danger, and it was his stepping into the water that set in motion the causes that produced the injury, and was therefore the proximate cause of the injury complained of, and the averments of the complaint, we think, clearly show that appellant's negligence was responsible for this act, in that it failed to prevent it. In other words, if appellant had performed its duty, this act, which set in motion the causes producing the injury, would not have been done. *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, and cases cited.

Was the injury such as appellant might reasonably anticipate would occur? We think this question is fully met and answered by what has already been said in reference to the conditions which it is shown surrounded the cinder pot. Here was the hot slag in the cinder pot, passing from a molten liquid state into a hardened mass, in which it necessarily came into the state that made it dangerously explosive. Here

were pools of water in the immediate vicinity. It was almost inevitable that those who worked about said cinder pot, in ignorance of its character, would cause the water to splash on it. We think that the facts set forth in the complaint not only show that the accident might reasonably have been anticipated, but they show such a state of facts as rendered it almost inevitable that it would happen.

No error intervened in overruling appellant's demurrer to the complaint. The effect of the answers to the interrogatories, so far as they can be said in any manner to conflict with the general verdict, is destroyed by contradiction, and the court committed no error in overruling appellant's motion for judgment in its favor upon them.

The reasons assigned for a new trial, that are brought in review in this appeal, call in question, among other things, certain instructions given by the court to the jury, and certain instructions asked by appellant that were refused.

Appellee insists that no question is presented by the record on the instructions given and refused, for the reason that the instructions are not brought into the record in accordance with the provisions of §561 Burns 1908, Acts 1907 p. 652. The instructions given and refused appear in the record by a special bill of exceptions, and are, therefore, properly before us. *Pittsburgh, etc., R. Co.* v. *Reed* (1905), 36 Ind. App. 67.

Complaint is made of certain instructions given by the court on its own motion. It insisted that instruction six, which imposes upon the master the duty to warn a servant known to be ignorant of a danger known to the master is erroneous, because it would impose on the master the duty to warn of an obvious danger. The uncontradicted evidence in this case disposes of this objection. The danger arising from the contact of water with the hot slag, as it is described in the complaint and shown in the evidence, was not an obvious danger; it arose out of the

nature of the materials the employe was required to deal with, and from causes that he would not necessarily understand.

Instructions nine and thirteen are criticised because of the use of the phrase "may consider" instead of "must consider." No error can be predicated on the giving of these instructions. The questions sought to be raised by appellant are properly presented upon the refusal of the court to give the instructions in the imperative form, and are discussed under that head.

The objection to instruction ten, given by the court to the jury, presents the same questions that arise upon objections to instruction six, and for the same reason is not well taken.

Instruction eleven, given by the court, which is criticised by appellant as being outside of the issues, simply informs the jury that the duty of the master to warn and instruct an ignorant servant of hidden dangers is commensurate with the danger to be apprehended. We see no fault in this instruction. There was evidence from which the jury might have found that appellee was entirely ignorant of the nature of the hot slag, and the danger of the contact of water therewith.

Appellant, at the proper time, requested the court to instruct the jury as follows: "If you find from the evidence in the case that plaintiff worked for a considerable number of years in the mill of defendant, and during that time explosions of cinders frequently occurred, and that in said mill during all said time it was a matter of common knowledge and general repute that hot cinders would explode when brought in contact with water, or anything that was moist and contained water, after the manner alleged in the complaint, and if you further find that during said period of employment plaintiff was brought in close proximity with the busheling furnace, and the taps which contained the slag, the explosion of which is alleged to have

caused his injuries, then I instruct you that such evidence * * * must be considered by you in determining whether plaintiff knew, or could have known by the exercise of reasonable care, of the danger which caused the injury.''

The court refused to give this instruction in the exact form asked, but gave it after substituting the phrase "may consider" for "must consider," in determining the question of notice. Appellant complains of the refusal of the court to give this instruction as it was tendered, and this is one of the grounds on which a reversal is sought. It is earnestly contended by appellant that the court committed a reversible error in substituting the word "may" for the word "must" in said instruction.

Without deciding this question, we think that no error can be predicated on the refusal of the court to give the instruction. Before complaint can be made of the refusal of the court to give an instruction tendered, the instruction must be such as the party is entitled to have given to the jury. Can it be said, as a matter of law, that the bare facts stated in this instruction, assuming them to be true, regardless of what other facts or circumstances appeared in the evidence, as the jury should view it, absolutely required that the jury should give these facts consideration in determining the question of notice to appellee of the danger? Suppose the jury should conclude that although these explosions did occur, as set forth in the instruction, and that it was a fact, as set forth therein, that appellee was working for appellant at the time the explosions occurred, and that his work frequently brought him in close proximity to the busheling furnace and taps containing the cinders, yet that such explosions occurred at such times and under such circumstances that appellee did not and could not hear them, would it be contended that the jury should give any consideration whatever to the fact that such explosions did occur while appellee was in appellant's employ? Whether these facts were necessary and proper to be considered

in determining the question of notice would depend altogether on whether the explosions occurred under such circumstances that appellee heard them; and that fact was to be determined by the jury, not from the fact alone that the explosions occurred and that appellee worked in proximity to the busheling furnace and taps, but from all the evidence in the case. These recited facts were only proper to be considered by the jury in connection with the other evidence in the case, and to have rendered the instruction tendered impervious to objection, it should have so stated. The instruction tendered told the jury that the facts therein mentioned · must be considered in determining the question of notice, regardless of whether the jury believed from all the evidence that the explosions were heard by the appellee, and we think no error intervened in refusing this instruction.

The refusal of the court to give other instructions asked by appellant is complained of. We have carefully examined such instructions, and conclude that they are substantially covered by instructions given by the court, and that therefore no error intervened in the refusal of the court to give them.

It is insisted, further, that the evidence is not sufficient to sustain the verdict. While the evidence was conflicting, we cannot concur in appellant's view.

Judgment affirmed.

## CONCURRING OPINION.

ROBY, J.—It has many times been held that the use of the word "should" in such an instruction as the one herein considered was reversible error. *Woollen* v. *Whitacre* (1883), 91 Ind. 502, cases there cited.

It was subsequently held, most reasonably, indeed, that "when a judge tells the jury that it is proper for it to consider the interest, manner, etc., of the witnesses, as it is usually phrased, he is but ruling as he may rightly rule

that such evidence is competent; and, in searching for the fact established by the evidence, it is the duty of the jury to consider all competent evidence that may throw light upon the truth, and it is no less essential to a correct result, and quite as much the jury's duty to consider facts and circumstances properly before them, which go to discredit a witness or to strengthen his testimony as it is to consider the statements made by the witnesses. The cases of *Woollen* v. *Whitacre* [1883], 91 Ind. 502, *Unruh* v. *State, ex rel.* (1886), 105 Ind. 117, *Duvall* v. *Kenton* (1891), 127 Ind. 178, and perhaps some others, so far as they may seem to hold to a different rule, are no longer authorities upon the question here involved." *Fifer* v. *Ritter* (1902), 159 Ind. 8, 12.

Of course there is a difference between words permissive and words imperative, but where the instructions taken together show that "may" was understood as a direction to consider and weigh, there is no error in using it, and so of the misuse of the word "should," or its equivalent, while we all know that the understanding of the jury depends not upon the technical accuracy of language, so much as upon the accent, emphasis and tone of the judge who gives the instruction. The decision in the case of *Fifer* v. *Ritter, supra,* was the perfection of reason, and is expressive of the law.

The writer of the opinion in *Southern R. Co.* v. *Slate* (1905), 165 Ind. 613, apparently understood the holding that permitted the use of the word "should" to be a declaration that no other form of expression could properly be used. In this he was mistaken. The case is not therefore an authority upon the subject, being based, as the opinion shows, upon a misapprehension.