## Toledo, St. Louis and Western Railroad Company *v.* Home Insurance Company of New York.

[No. 8,001.   Filed May 27, 1913.]

1   Railroads.—*Fires.*—*Liability.*—While a railroad company may use fire in the operation of its locomotives and is relieved from liability for injury occasioned by the escape of fire which necessarily results from the operation of its locomotives, it is liable for negligence in failing to properly equip such locomotives with proper spark arresters, or in operating such locomotives so as to negligently cause or permit the emission of sparks therefrom. p. 461.

2.   Railroads.—*Fires.*—*Negligence.*—*Evidence.*—*Sufficiency.*—In an action against a railroad company to recover for a fire loss, evidence of facts and circumstances from which the jury may fairly infer that defendant's locomotive was either defective in its condition or negligently operated, and that the emission of sparks was unusual in quantity or character, is sufficient to warrant a jury in inferring that defendant was negligent. p. 462.

3.   Railroads.—*Fires.*—*Negligence.*—*Jury Question.*—*Appeal.*—In an action against a railroad company to recover for a fire loss, the question of defendant's negligence is ordinarily a question of fact for the jury, and its finding will not be disturbed on appeal if the evidence is such that fair-minded men may honestly draw different conclusions therefrom. p. 463.

4.   Railroads.—*Fires.*—*Inferences.*—*Negligence.*—Proof of a fire after a locomotive has passed will not of itself warrant an inference of negligence in the equipment or operation of the train. p. 464.

5.   Railroads.—*Fires.*—*Negligence.*—*Evidence.*—*Sufficiency.*—In an action against a railroad company for the destruction of plaintiff's house by fire, evidence that large blazing sparks were being emitted from the passing train and that when the fire department arrived, which was about twenty minutes after the train had passed, the side of the house nearest the track was entirely burned away, and that at the time there was no fire in any of the stoves, and there was no fire anywhere in close proximity, is sufficient to warrant the jury in inferring that the building was set on fire by the passing train, and the court cannot say as a matter of law that the defendant was not negligent. p. 464.

6.   Evidence.—*Weight and Sufficiency.*—Where the evidence is of any probative force whatever, the weight to be given thereto, and the inferences to be drawn therefrom, are matters for the jury. p. 465.

From Howard Circuit Court; *William C. Purdum,* Judge.

Action by the Home Insurance Company of New York against the Toledo, St. Louis and Western Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Guenther & Clark, Clarence Brown* and *Charles A. Schmettan,* for appellant.

*Harness, Moon & Voorhis,* for appellee.

HOTTEL, J.—This is an appeal from a judgment for $250 obtained by the appellee in an action brought by it against the appellant for damages to a house resulting from a fire alleged to have been caused by appellant's negligence. The appellee had written a policy of insurance on such house and claimed to be subrogated to the rights of the owner thereof by reason of having paid to him, under such policy, the loss sustained on account of such fire and by reason of an assignment to this effect from such owner. The complaint was in three paragraphs, a demurrer to each of which was overruled, but as such ruling is not questioned in this court we need only indicate in a general way the theory of each paragraph. The first paragraph proceeds on the theory that appellant, while operating its locomotive and train of cars over its track through the city of Kokomo, near the property in question, carelessly and negligently and wrongfully failed and omitted to use a safe and sufficient spark arrester on its locomotive, or other proper appliance, to prevent the emission of unusually large and dangerous sparks and coals of fire from such locomotive, and negligently, carelessly and wrongfully ran and operated said locomotive at a high and unnecessary "head of steam" and thereby caused such locomotive to emit unusually large and dangerous sparks and coals of fire, which set such property on fire. The second paragraph charges that appellant negligently, carelessly and wrongfully so ran and operated its locomotive and train of cars through said city and by

the property in question at such a high rate of speed and excessive "head of steam" as to unnecessarily overtax the power of such locomotive and thereby caused it to emit unusually large and dangerous sparks and coals of fire, etc. The third paragraph is practically the same as the first except that the only negligence charged is appellant's failure to use a safe and sufficient spark arrester *or other proper appliance* on its locomotive to prevent the emission of unusually large and dangerous sparks and coals of fire from such locomotive, etc.

The overruling of the motion for new trial is the only error relied on. Such motion contains numerous grounds, but appellant, in its brief, presents and urges only two of such grounds, viz., that the court erred in overruling appellant's motion to direct a verdict in its favor, and that the verdict of the jury is not sustained by sufficient evidence. These grounds may be considered together as they, in effect, present the same question. It is conceded by appellant that the evidence shows "that appellant's passenger train passed the house in question puffing and blowing a whistle, running fast and that it emitted numerous sparks, some of which were as large as a woman's finger and that in about twenty minutes after the train passed the house, it was found to be on fire." It is insisted that such evidence in no wise tends to prove either defective equipment of the locomotive or negligent operation; that there is nothing in the evidence "to show that a locomotive equipped with a spark arrester in good repair and carefully operated by competent employes, would not have emitted and thrown sparks and coals of fire of the same size, in the same quantity, for a like distance, and with the same effect as those emitted by the locomotive in question."

It may be admitted as appellant contends, that a 1. railroad company has the right to use fire in the operation of its locomotive and that it is a matter of universal knowledge that no locomotive can be so operated

that it will not emit fire at times and that such right to use fire relieves such company from liability for injury to property resulting from the escape of fire which necessarily results from the operation of its locomotives; that it is only liable for its negligence in failure to properly equip such locomotive with the proper spark arrester or for negligence in its operation of such locomotive in such a manner as to negligently cause or permit the emission of sparks from such locomotive. *Lake Erie, etc., R. Co.* v. *Gossard* (1896), 14 Ind. App. 244, 245, 42 N. E. 818; *New York, etc., R. Co.* v. *Baltz* (1895), 141 Ind. 661, 36 N. E. 414, 38 N. E. 402; *Indianapolis, etc., R. Co.* v. *Paramore* (1869), 31 Ind. 143; *Toledo, etc. R. Co.* v. *Fenstermaker* (1904), 163 Ind. 534, 538, 72 N. E. 561. This admission, however, does not necessitate the conclusion reached by appellant that there is no evidence in this case from which a jury could infer, either that the appellant was negligently using on its locomotive at the time of such fire a defective spark arrester, or that it was at such time so operating its locomotive as to negligently cause it to emit sparks of fire in unusual size and quantities, and that the firing of the house in question with the resulting damages thereto, was attributable to the one or the other of said causes.

2. Appellant contends that the "only way to prove negligent operation or construction by circumstantial evidence is first, by proof of quantity, size and character of the sparks actually thrown out; second, by proof by experts that sparks of such character would not be emitted from a locomotive in proper repair or properly operated," and that proof of size and quantity of the sparks alone without supplementing it with the further proof indicated, will not warrant an inference of negligence. In support of its contention appellant cites: *Peck* v. *New York Central, etc., R. Co.* (1901), 165 N. Y. 347, 59 N. E. 206; *Toledo, etc., R. Co.* v. *Fenstermaker, supra.* While these authorities recognize that such negligence may be proved

in the manner indicated by appellant, they do not support its position that *this is "the only way* to prove" such fact by circumstantial evidence. The case of *Peck* v. *New York Central, etc., R. Co., supra,* 206, which lends strongest support to appellant's contention, recognizes the probative value and effect of evidence showing that sparks of unusual size and quantity were emitted from the locomotive in question as is evidenced by the following language of the opinion in that case: "But while it was necessary for the plaintiff to affirmatively establish negligence on the part of the defendant, either in the condition or in the operation of its engines for which the mere occurrence of the fire was not sufficient, it was not necessary that he should prove either the specific defect in the engine or the particular act of misconduct in its management or operation constituting the negligence causing the injury complained of. It was sufficient if the plaintiff proved facts and circumstances from which the jury might fairly infer that the engine was either defective in its condition or negligently operated. *The emission of sparks unusual in quantity or character, or of an extraordinary size, such as would not be emitted from well-constructed locomotives in proper repair, would justify the jury in inferring negligence,* and, though not shifting the burden of proof, would cast upon the defendant the duty of explanation."

Whatever may be the rule in other jurisdictions, 3. we think it is well settled by the decisions of this State, that negligence in this character of cases, the same as in all other cases, is, ordinarily, a question of fact for the jury, and that on such question the Appellate Court will not substitute its judgment for that of the jury, where the evidence is of such a character, that fair minded men may honestly draw therefrom different conclusions. *City of Franklin* v. *Harter* (1891), 127 Ind. 446, 448, 26 N. E. 882; *Cole* v. *Searfoss* (1912), 49 Ind. App. 334, 97 N. E. 345, 347; *Malott* v. *Hawkins* (1902), 159 Ind. 127, 135,

63 N. E. 308; *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490, 494, 495, 77 N. E. 945; *W. C. DePauw Co.* v. *Stubblefield* (1892), 132 Ind. 182, 185, 31 N. E. 796; *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 701, 88 N. E. 612.

4. To the extent that proof of a fire after a locomotive has passed will not of itself warrant an inference of negligence in the equipment or operation of such train, appellant's contention is supported by Indiana decisions as well as by the decisions of other jurisdictions.

5. The evidence in this case, however, shows more than that the property took fire after the engine passed. In addition to the facts before indicated as conceded by appellant to have been proven, there was evidence to the effect that the fire alarm was received at the fire station in seventeen minutes after the train in question left the Kokomo station. The fire department reached the fire three or four minutes later and then found the west side and northwest part of the house practically burned away. The distance from the northwest corner of the house to the center of appellant's track west was 150 feet, and measured on a northwest line, was 51 feet. There was a strong wind from the west and northwest. One of the witnesses heard the train coming very fast and it blew so rapidly that she got up and walked to the corner of the house and "saw the fire and sparks dazzling around rapidly and the wind was blowing right toward our house *and the sparks from it was like blazes* of fire toward our house." (Our italics.) This witness said she saw sparks, and a good many of them the size of the end of her finger "that lit toward the house," that she was alarmed as to the safety of the house; that her little daughter called her to see the sparks and fire coming out of the engine; that she saw blazing sparks and cinders fall all through the yard. This display of sparks was in daytime about 2:38 p. m. and the fire alarm was received at the fire station at 2:55 p. m. There was evidence show-

ing that at the time the house caught on fire there was no fire in any of its stoves or flues, and that there were no houses or fire anywhere in close proximity. Under this evidence this court cannot say as a matter of law that appellant was not guilty of any negligence, but on the contrary such evidence warranted the jury in inferring that the unusual size and quantity of the sparks shown by such evidence could be accounted for only on the theory that appellant either used a defective spark arrester on its locomotive or that it so negligently operated it that it emitted sparks in unusual size and quantities, and that the sparks so emitted set fire to the building in question. That such evidence was sufficient to warrant the jury in inferring that the building was set on fire by the passing engine has been frequently decided by both the Supreme Court and this court. *Toledo, etc., Co.* v. *Fenstermaker, supra; Pittsburgh, etc., R. Co.* v. *Indiana Horseshoe Co.* (1900), 154 Ind. 322, 333, 56 N. E. 766, and authorities cited; *Baltimore, etc., R. Co.* v. *Trustees, etc.* (1912), 50 Ind. App. 220, 98 N. E. 141, 142 and cases there cited.

If appellant be correct in its contention that negligence in such cases can never be proven by the size and quantity of the sparks, except it be supplemented by expert proof showing that a locomotive properly operated with an approved spark arrester in proper repair would not emit such sparks, it must follow that evidence of the size and quantity of the sparks and the distance they are thrown, and the length of time they continued to burn, is without any probative force in determining such question. On

6. the other hand, if it be conceded that such evidence has any probative force, in determining such question, and all the authorities cited by appellant so hold, it follows that the weight to be given thereto and the inference to be drawn therefrom must be, as in all other cases, a question for the jury unless the facts be of such a character,

that but one inference can be drawn therefrom, in which case it becomes the duty of the court under the authorities before cited, to draw the inference.

We cannot say that the facts disclosed by the evidence in this case warrant but a single inference, but on the contrary they are of such a character that fair and honest men might differ as to the inference that should be drawn therefrom, and hence that drawn by the jury should be allowed to stand. Judgment affirmed.

NOTE.—Reported in 101 N. E. 1035. See, also, under (1) 33 Cyc. 1325, 1332, 1336; (2) 33 Cyc. 1379; (3) 33 Cyc. 1394, 1396, 1404; (4) 33 Cyc. 1359; (5) 33 Cyc. 1361, 1381; (6) 38 Cyc. 1516, 1517. As to validity of law imposing upon railroad companies duty to equip engines with spark arresters and making communication of fire *prima facie* evidence of negligence, see 62 Am. St. 171. On the question of the effect of presumption from fact that fire was set by locomotive to carry question of negligence to jury, see 5 L. R. A. (N. S.) 99. As to the power of the legislature to make injury by fire from locomotives *prima facie* evidence of negligence, see 32 L. R. A. (N. S.) 227. As to the presumption of negligence arising from the communication of fire by a railroad engine, see 1 Ann. Cas. 815; 16 Ann. Cas. 882.